UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  23-80633-CIV-ALTONAGA/Maynard

SUPREME FUELS TRADING FZE,

      Plaintiff,

v.

HARRY SARGEANT, III,

      Defendant.

_____/

## ORDER

     **THIS CAUSE** is before the Court on Defendant, Harry Sargeant, III's Motion to Dismiss
[ECF No. 25], filed on July 5, 2023.  Plaintiff, Supreme Fuels Trading FZE, filed its Response
[ECF No. 28] on July 20, 2023, to which Defendant filed a Reply [ECF No. 29] on July 27, 2023.
The Court has carefully considered the Complaint in Proceedings Supplementary to Execution
[ECF No. 1] (the "Complaint"), the parties' written submissions, the record, and applicable law.
For the following reasons, the Motion is denied.

## I.  BACKGROUND

     This matter stems from a case brought by Plaintiff almost 15 years ago on October 21,
2008, against Defendant and two entities he owned and managed — International Oil Trading
Company LLC ("IOTC USA") and International Oil Trade Center.  *See generally Supreme Fuels
Trading FZE v. Harry Sargeant III, et al.*, No. 08-cv-81215-Hurley (S.D. Fla. 2023) (the "Main
Action").  The parties settled the Main Action, and the court entered an Amended Final Judgment
against IOTC USA in the amount of $5,000,000.00.  *See id.*, Am. Final J. [ECF No. 168] filed
May 6, 2011.  The Settlement Agreement includes a release of all Defendants in the Main Action,

including Defendant, from future liability related to the action.  (*See* Mot. 6).[1]  On April 11, 2023, upon a *sua sponte* review of the record — and after Plaintiff's numerous motions to initiate proceedings supplementary to execution under Florida Statutes section 56.29 — the Court ordered the Clerk to open this case with the Complaint appearing as the first entry on the docket.  *See Supreme Fuels Trading FZE*, No. 08-cv-81215-Altonaga, Order [ECF No. 273] filed April 11, 2023.

Plaintiff brings a single claim of alter ego liability against Defendant, requesting that the Court pierce the corporate veil between Defendant and IOTC USA and hold Defendant personally liable for the Amended Final Judgment as IOTC USA's alter ego.  (*See* Compl. ¶¶ 28–32).  Plaintiff alleges that Defendant is a partial owner of "IOTC Dubai," which was later redomiciled in the Bahamas and became "IOTC Bahamas," and that IOTC Bahamas is the "sole member (owner) of IOTC USA."  (*Id*. ¶¶ 13, 16).  Plaintiff further alleges "IOTC Bahamas . . . is the alter ego of IOTC USA, and both IOTC Bahamas and IOTC USA are the alter ego of [Defendant] . . . both of which are operated as a corporate shell for [Defendant's] own dealings."  (*Id*. ¶ 20 (alterations added)).  Plaintiff thus seeks an order "holding [Defendant] personally liable for the $5,000,000.00 [Amended Final Judgment] as an alter ego of IOTC USA."  (*Id*. 8 (alterations added)).

Defendant moves to dismiss the single-count Complaint, arguing that: (1) the alter ego claim is barred by *res judicata* and the parties' settlement; (2) the claim is barred by the statute of limitations, or, alternatively, the doctrine of laches; and (3) the Complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6), because Plaintiff fails to plead sufficient facts to satisfy all three elements of its alter ego claim.  (*See generally* Mot.).

_____

[1] The Court uses the pagination generated by the electronic CM/ECF database, which appears in the headers of all court filings.

CASE NO. 23-80633-CIV-ALTONAGA/Maynard

## II.  LEGAL STANDARD

The standard governing review of a Rule 12(b)(6) motion is well established.  "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (alteration added; quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id*. (alteration added; quoting *Twombly*, 550 U.S. at 555).  Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (citation omitted).  Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

To meet this "plausibility standard," a plaintiff must "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. at 678 (alteration added; citing *Twombly*, 550 U.S. at 556).  "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss."  *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1261 (11th Cir. 2009) (citation omitted), *abrogated on other grounds by Mohamad v. Palestinian Auth.*, 566 U.S. 449 (2012).  On a motion to dismiss, a court construes the complaint in the light most favorable to the plaintiff and accepts its factual allegations as true.  *See Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (citing *SEC v. ESM Grp., Inc.*, 835 F.2d 270, 272 (11th Cir. 1988)).

CASE NO. 23-80633-CIV-ALTONAGA/Maynard

## III.  DISCUSSION

### A.  *Res Judicata*

Defendant argues that this proceeding is barred by the doctrine of *res judicata*.  (*See* Mot. 7–10).  According to Plaintiff, *res judicata* is not appropriate for resolution at the motion-to-dismiss stage and the doctrine does not apply to supplementary proceedings like this one.  (*See* Resp. 4–5).

*Res judicata*, or claim preclusion, refers to "the preclusive effect of a judgment in foreclosing relitigation of matters that should have been raised in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984) (citation omitted); *see also In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001).  "[A] district court may properly dismiss an action under Rule 12(b)(6) as barred by *res judicata*." *Hilliard v. Gutierrez*, No. 21-cv-20513, 2021 WL 2712122, at *3 (S.D. Fla. July 1, 2021) (alteration added; citing *Starship Enters. of Atl., Inc. v. Coweta Cnty., Ga.*, 708 F.3d 1243, 1252 n.13 (11th Cir. 2013)); *see also Brown v. One Beacon Ins. Co. Inc.*, 317 F. App'x 915, 917 (11th Cir. 2009).

*Res judicata* applies when: "(1) a final judgment on the merits was entered; (2) the prior decision was rendered by a court of competent jurisdiction; (3) the parties, or those in privity with them, are identical in both suits; and (4) the same cause of action is involved in both cases." *Sealey v. Branch Banking & Tr. Co.*, 693 F. App'x 830, 833 (11th Cir. 2017) (citing *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1187 (11th Cir. 2003); *Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999)).

"In general, cases involve the same cause of action for purposes of res judicata if the present case 'arises out of the same nucleus of operative fact, or is based upon the same factual predicate, as a former action.'" *Isr. Disc. Bank Ltd. v. Entin*, 951 F.2d 311, 315 (11th Cir. 1992) (quoting

4

*Citibank, N.A. v. Data Lease Fin. Corp.*, 904 F.2d 1498, 1503 (11th Cir. 1990)).  The claims alleged in the prior and current action need not be identical; instead, the inquiry focuses on the similarity of the alleged underlying factual conduct giving rise to the claims.  *See Maldonado v. U.S. Atty. Gen.*, 664 F.3d 1369, 1376 (11th Cir. 2011) ("*Res judicata* acts as a bar not only to the precise legal theory presented in the previous litigation, but to all legal theories and claims arising out of the same operative nucleus of fact." (citations and quotation marks omitted)).

While the parties disagree about whether *res judicata* bars this proceeding, neither party cites a single case discussing *res judicata* in the context of supplementary proceedings.  (*See generally* Mot; Resp.; Reply).  Plaintiff treats this as a typical proceeding and argues that the *res judicata* issue is not ripe for consideration on a motion to dismiss.  (*See* Resp. 4–6).  Defendant responds by citing cases that show courts are willing to decide the *res judicata* issue at the motion-to-dismiss stage.  (*See* Reply 2–4).

"Although res judicata is an affirmative defense that is properly raised under Federal Rule of Civil Procedure 8(c)(1), a party may raise it in a Rule 12(b)(6) motion to dismiss 'where the defense's existence can be judged on the face of the complaint.'"  *Harrell v. Bank of Am., N.A.*, 813 F. App'x 397, 400 (11th Cir. 2020) (quoting *Concordia v. Bendekovic*, 693 F.2d 1073, 1075 (11th Cir. 1982)).  Significantly, "[i]n making this determination, [courts] may consider documents attached to the complaint and take judicial notice of state and federal court records of prior proceedings[,]" *id.* (alterations added; citing *United States ex rel. Osheroff v. Humana, Inc.*, 776 F.3d 805, 811–12 & n.4 (11th Cir. 2015)); *see also Desisto v. City of Delray Beach*, 618 F. App'x 558, 560 (11th Cir. 2015); *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013), including its own records, *see Irina Chevaldina v. Ctr. for Individual Rts.*, No. 20-24690-cv, 2021 WL 8776795, at *7 (S.D. Fla. Dec. 15, 2021) (citation omitted).

The Court sees no issue with taking judicial notice of opinions and findings in the Main Action, including the Order Granting in Part Defendants' Motion to Set Aside and/or Reconsider Final Judgment [ECF No. 167] ("Reconsideration Order"), entered on May 6, 2011. *See Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 240 (5th Cir. 1997) (concluding that, in supplementary proceedings, trial judge was entitled to take judicial notice of "findings that he had made as part of the trial over which he presided" (citations omitted)). In the Reconsideration Order, the court held that Defendant was not jointly liable for the $5,000,000 payment based on the terms of the settlement agreement. *See* Reconsideration Order 2 n.1. "It is obvious on the face of the supplementary pleadings that [Plaintiff's] cause of action in the supplementary proceedings is the alleged effort by [Defendant] to defraud [Plaintiff] through measures taken to prevent [Plaintiff] from collecting on its judgment[,]" so the cause of action in the supplementary proceeding is "clearly distinct" from that in the Main Action, and *res judicata* does not bar it. *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 584–85 (1st Cir. 1995) (alterations added); (*see, e.g.*, Compl. ¶ 21 (describing actions the IOTC entities and Defendant took to use "funds for an improper purpose"); *id.* ¶ 31 (alleging Defendant "organized IOTC Bahamas to aid with fraudulent or misleading conduct.")).

As the court in *Apparel Art International* explained, "supplementary proceedings can only be precluded by res judicata if the same cause of action, i.e. [Defendant's] fraudulent efforts to avoid execution of the judgment . . . was previously litigated to a judgment on the merits[.]" 48 F.3d at 584 (alterations added). Here — as in *Apparel Art International* — "it is clear that the cause of action raised in [Plaintiff's] supplementary pleading has never before been litigated on the merits and simply represents [Plaintiff's] effort to enforce the judgment already entered by the

district court in [the original action]." *Id.* (alterations added).  Thus, *res judicata* does not bar these proceedings.

## B.  Election of Remedies

Defendant makes a separate but related argument that "Plaintiff's election to enforce the settlement agreement bars its claim against [Defendant]."  (Mot. 9 (alteration added)).  According to Defendant, "the election of remedies doctrine" should estop Plaintiff from pursuing this action because of Plaintiff's previous efforts to enforce the settlement agreement.  (*Id.* (citation omitted)).  Defendant cites *Barbe v. Villeneuve*, 505 So. 2d 1331, 1333 (Fla. 1987), a Florida Supreme Court case that discusses the application of the election-of-remedies doctrine.  (*See* Mot. 5).  The court in *Barbe* explained that one remedy may bar another when the remedies "proceed from opposite and irreconcilable claims of right" and are "so inconsistent that a party could not logically follow one without renouncing the other."  *Id.* (citations omitted).

Yet, Defendant does not explain why the remedy Plaintiff is pursuing in these supplementary proceedings is "inconsistent" with Plaintiff's attempts to enforce the settlement agreement against IOTC USA.  (*See generally* Mot.).  In the Main Action, Plaintiff sought modification of the Judgment in order to enforce the settlement agreement against Defendant directly (*see* Reconsideration Order 1–2); in these proceedings, Plaintiff — admitting now that Defendant was not a party to the settlement agreement — is initiating a different attempt to collect on the still unpaid judgment based on "[Defendant's] fraudulent efforts to avoid execution[,]" *Apparel Art Int'l, Inc.*, 48 F.3d at 584 (alterations added).

In short, the Court is skeptical that the remedies are inconsistent, especially given the absence of citations to cases where courts have applied the doctrine to bar supplementary proceedings.  The Court declines Defendant's invitation to rule on its election-of-remedies

argument to allow for additional consideration on a more complete record.  *See Dipietro v. City of Hialeah*, 424 F. Supp. 3d 1286, 1294–95 (S.D. Fla. 2020) (alteration added; footnote call number omitted).

### C.  Statute of Limitations

Defendant next states that a five-year statute of limitations, Florida Statutes section 95.11(2)(a), applies here and bars these proceedings, since Plaintiff did not sue Defendant until a decade after the Court entered the Judgment and did not file this action until nearly 12 years after the Judgment.  (*See* Mot. 10–12).  "[A] statute of limitations bar is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in its complaint[.]"  *Sanguinetti v. JPMorgan Chase Bank Nat'l Ass'n,* No. 20-cv-81023, 2020 WL 7765792, at *4 (S.D. Fla. Nov. 13, 2020) (alterations added). Dismissal under Federal Rule of Civil Procedure 12(b)(6) on statute-of-limitations grounds is nevertheless appropriate "where it is apparent from the face of the complaint that the claim is time-barred."  *United States v. Henco Holding Corp.*, 985 F.3d 1290, 1296 (11th Cir. 2021) (quotation marks and citations omitted).

Florida's statute of limitations provides, in relevant part, "[a]n action on a judgment or decree of any court [other than for the recovery of real property], not of record, of this state or any court of the United States, any other state or territory in the United States, or a foreign country" shall be commenced within five years.  Fla. Stat. § 95.11(2)(a) (alterations added).  "This statute has been applied to actions to enforce a judgment in Florida against the alleged alter ego of the judgment debtor."  *Bell v. Reine*, 305 F. App'x 542, 543–44 (11th Cir. 2008) (citing *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1243 (Fla. 1st DCA 1995)).  According to Defendant, *Bell* suggests that Plaintiff's alter ego claim is untimely under section 95.11(2)(a). (*See* Mot. 10–11).

Plaintiff points to *Young v. McKenzie*, 46 So. 2d 184, 185 (Fla. 1943), where "the Florida Supreme Court held that proceedings supplementary to execution do not constitute an action upon a judgment, as the term is used in [section 95.11]."  (Resp. 6 (quotation marks omitted; alteration added)); *see also Rosenberg v. U. S. Bank*, 360 So. 3d 795, 801 (Fla. 3d DCA  2023), *reh'g denied* (June 7, 2023) ("there is nothing absurd in allowing judgment creditors in proceedings supplementary to have the benefit of a statute of limitations that extends for the life of the judgment.").  Defendant argues *Young* is distinct because it "involved proceedings supplementary against the actual judgment debtor" but fails to explain the significance of this distinction. (Reply 5).  The Court is unpersuaded that section 95.11 applies to this proceeding and will not grant dismissal on that basis.

Courts in this District have declined to follow *Bell*, finding that this "limited and unpublished opinion[] is at best persuasive, not binding." *Milliken & Co. v. Haima Grp. Corp.*, 654 F. Supp. 2d 1374, 1381 (S.D. Fla. 2009) (alteration added; citation omitted).  In *Bell*, the court relied on *Turner Murphy*, 659 So. 2d at 1243.  *See Bell*, 305 F. App'x at 543–44.  Florida appellate decisions that post-date *Turner Murphy* and "detailed Florida Supreme Court opinions" ignored by the *Bell* court "hold that [a] twenty (20) year statute of limitations applies" to judgment enforcement actions.  *Milliken & Co.*, 654 F. Supp. 2d at 1381 (alteration added; citing *Nadd v. Le Credit Lyonnais, S.A.*, 804 So. 2d 1226 (Fla. 2001); *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA.*, 805 So. 2d 835 (Fla. 4th DCA 2001); *B.A. Lott, Inc. v. Padgett*, 14 So. 2d 667 (1943); *Young*, 46 So. 2d 184).  The Court is not persuaded that this is an "action on the judgment" as contemplated by section 95.11.[2]

---

[2] In any case, the Complaint is ambiguous as to when exactly the alleged alter ego claim arose.  (*See generally* Compl.).  Even if the five-year statute of limitations applied, the Court would be unwilling to dismiss the Complaint based on a statute-of-limitations defense at this stage.  *See Tuuci Worldwide, LLC v. S. Frankford & Sons, Inc.*, No. 23-20615-Civ, 2023 WL 5275187, at *6 (S.D. Fla. Aug. 16, 2023).

### D.  Doctrine of Laches

Defendant further argues that the doctrine of laches bars this suit.  (*See* Mot. 10–12). Plaintiff insists that "the Court should not adjudicate the affirmative defense of laches in a motion to dismiss[.]"  (Resp. 8 (alteration added)).  The Court agrees with Plaintiff.  The "laches defense is . . . fact-specific and not well-suited for decision on a motion to dismiss."  *Ultra-Images, LLC v. Franclemont*, No. 05-60538-Civ, 2005 WL 8154576, at *2 (S.D. Fla. Nov. 8, 2005) (alteration added; citations omitted).  That is certainly the case here, where the Complaint does not even allege when the IOTC entities were used to fund "improper purpose[s]" or when Plaintiff became aware of this conduct.  (Compl. ¶ 21 (alteration added)).

### E.  Failure to State a Claim

Lastly, Defendant argues Plaintiff fails to plead facts sufficient to state an alter ego claim. (*See* Mot. 12–16).  "In the context of a supplementary proceeding, alter ego/veil-piercing is a standalone cause of action to hold supplemental defendants liable to the same extent as the judgment debtor."  *Tropical Paradise Resorts, LLC v. JBSHBM, LLC*, 343 F.R.D. 443, 450 (S.D. Fla. 2023).  To pierce the corporate veil under Florida law, the plaintiff must allege the following three elements:

> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (emphasis in original; citations omitted).

According to Defendant, Plaintiff fails to plead facts showing Defendant controlled IOTC USA. (*See* Mot. 13–14). Plaintiff must plead facts showing "[t]he individual . . . used the corporate entity to perpetrate a fraud or [] so dominated and disregarded the corporate entity's corporate form that the corporate entity primarily transacted the individual's personal business rather than its own corporate business." *Williamson v. Recovery Ltd. P'ship*, 542 F.3d 43, 53 (2d Cir. 2008) (alterations added; citation, quotation marks, and other alterations omitted).

Defendant asserts that, the Complaint does not plead "facts reflecting that [Defendant] is an owner of IOTC USA." (Mot. 13 (alteration added)). Defendant insists that the lack of an allegation that Defendant even has an ownership interest in IOTC USA, let alone that he totally dominates and controls the entity, is fatal to Plaintiff's alter ego claim. (*See id.* 13–14). While the Complaint contains allegations that Defendant is a "co-owner" and "manager" of IOTC USA (Compl. ¶ 9), Defendant is correct that the Complaint does not allege it is a "shareholder" (*see* Resp. 14; *see generally* Compl.). Rather, Plaintiff alleges Defendant "has direct control over IOTC Bahamas and thus, direct control over IOTC USA, the entity to which it is sole shareholder." (Compl. ¶ 29).

In *Molinos*, the Eleventh Circuit held that "Florida law . . . does not permit a plaintiff to pierce the corporate veil against a non-shareholder director." 633 F.3d at 1351 (alteration added). "'Shareholders' include individuals who own stock and parent companies who own their subsidiaries." *Id.*, 633 F.3d at 1349 (citations omitted).

Generally, courts have refused to pierce the corporate veil when an individual defendant is not a shareholder, even if they are an executive or director of the entity. *See, e.g.*, *In re Air Crash near Rio Grande Puerto Rico on Dec. 3, 2008*, No. 11-md-02246, 2013 WL 1729385, at *4 (S.D. Fla. Apr. 22, 2013); *AKF Inc. v. Sonny's Enters. LLC*, No. 19-cv-62379, 2020 WL 43219, at *3

(S.D. Fla. Jan. 3, 2020) (dismissing alter ego claim because there were "no allegations that [the defendant] was a shareholder of [the judgment debtor], or that [the judgment debtor] was used for an improper purpose." (alterations added)); *Drone Nerds Franchising, LLC v. Childress*, No. 19-cv-61153, 2021 WL 6620674, at *5 (S.D. Fla. Nov. 15, 2021) (finding alter ego claim failed to reach the assets of a "non-shareholder sister company" of judgment debtor), *report and recommendation adopted*, No. 19-cv-61153, 2022 WL 196306 (S.D. Fla. Jan. 21, 2022).

*Molinos* "does not rule out piercing the corporate veil based on the conduct of non-shareholders." *Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 16-cv-366, 2023 WL 2523447, at *2 (M.D. Fla. Mar. 14, 2023). Some courts have found that *Molinos* only explicitly leaves room for a limited exception when ownership rests with a defendant's spouse or a close family member. *See, e.g.*, *In re Trujillo*, 607 B.R. 734, 740 (Bankr. S.D. Fla. 2019) (discussing "familial relationship" exception). Other courts have found that the rule is more flexible. *See, e.g.*, *SE Prop. Holdings, LLC v. Phillips*, No. 15-cv-554, 2016 WL 11529614, at *4 (N.D. Fla. May 4, 2016) ("the Eleventh Circuit emphasized the importance of ownership and control in the determination" (citation omitted)).

Defendant does not cite any further authority showing that stock ownership is a prerequisite to a finding that Defendant controls and dominates IOTC USA. (*See generally* Resp.; Reply). In *Cooper v. Meridian Yachts, Ltd.*, which Defendant cites (*see* Mot. 14 n.4), the court stated in dictum that being president and a beneficial owner would be insufficient to demonstrate alter ego liability. *See* 575 F.3d 1151, 1170 (11th Cir. 2009). This is uncontroversial. *See Molinos*, 633 F.3d at 1349. The court never stated that stock ownership is necessary to establish control. *See generally Cooper*, 575 F.3d 1151; *see also United States v. Fid. Cap. Corp.*, 920 F.2d 827, 838

(11th Cir. 1991) (concluding that facts of beneficial ownership and individual's position as president, alone, are insufficient to establish that individual is an alter ego of the entity).

Although there may be limits to when courts can pierce the corporate veil to reach non-shareholders, the Court cannot resolve the issue of whether Defendant controlled and dominated IOTC USA on an undeveloped record. The allegations certainly suggest that Defendant controls IOTC Bahamas, and IOTC Bahamas controls and dominates IOTC USA as its sole member and owner. *See Mile High Healthcare Analytics, LLC v. Med. Care Consortium Inc.*, No. 18-cv-22374, 2020 WL 9460325, at *3 (S.D. Fla. July 29, 2020) (finding allegations satisfied control element where the entities were allegedly operated "in tandem" as "shell companies . . . . under the direction and ownership of" the same individual (alterations added; citations and quotation marks omitted)); *see also SE Prop. Holdings, LLC*, 2016 WL 11529614, at *4 ("the fact that [the defendant] allegedly took pains to ensure that he personally does not appear as a 'shareholder' of [the entities], should not bar relief as a matter of law" (alterations added; footnote call number omitted)).

"[U]nlike in the *Molinos* case, Plaintiff[] ha[s] provided much factual support for [its] allegations that [IOTC USA] was dominated and controlled by [IOTC Bahamas]" and by Defendant via his control of IOTC Bahamas. *Netjets Aviation, Inc. v. Peter Sleiman Dev. Grp., LLC*, No. 10-cv-483, 2011 WL 11560026, at *6 (M.D. Fla. June 13, 2011), *report and recommendation adopted in part*, No. 10-cv-483, 2011 WL 11552881 (M.D. Fla. Sept. 27, 2011) (alterations added). For example, Plaintiff alleges "the activities and business of IOTC Bahamas were carried out without the holding of Directors or Shareholder meetings, no records or minutes of any corporate proceedings were maintained, and whereby [Defendant] entered into personal transactions with IOTC Bahamas without the approval of other directors and shareholders." (Compl. ¶ 22 (alteration added)). Plaintiff alleges IOTC Bahamas and IOTC USA are "operated

CASE NO. 23-80633-CIV-ALTONAGA/Maynard

as a corporate shell for [Defendant's] own dealings." (*Id.* ¶ 20 (alteration added)). "IOTC Bahamas has no legitimate business operation and its sole purpose is to hold the profits generated by IOTC USA[.]" (*Id.* ¶ 24 (alteration added)). Further, "IOTC Bahamas managed the proceeds generated from [IOTC USA's] contracts . . . to fund the personal luxurious lifestyle of [Defendant]." (*Id.* ¶ 17 (alterations added)). While it remains possible that the facts will show Defendant does not control or dominate IOTC USA, the Court will not "foreclose further consideration" of this "fact-intensive inquiry" at this stage. *NetJets Aviation, Inc.*, 2011 WL 11552881, at *1.

As for the second element — the "fraudulent" or "improper use" of the corporate form — Defendant argues that "Plaintiff's Complaint includes no allegations that [Defendant] deliberately misused IOTC USA to commit fraud." (Mot. 15 (alteration added)). "Improper conduct consists of using the corporation as 'a mere device or sham to accomplish some ulterior purpose.'" *Runton v. Brookdale Senior Living, Inc.*, No. 17-60664-Civ, 2018 WL 1057436, at *7 (S.D. Fla. Feb. 2, 2018) (citation and quotation marks omitted). The Complaint contains detailed allegations of fact that Plaintiff says "lay bare the sham corporate structure" of the IOTC entities. (Compl. ¶ 19). Defendant has allegedly taken advantage of this sham corporate structure to "subvert collection efforts, obfuscate the web of entities engaged in the contracts, and deprive creditors of the funds from the profits earned from such contracts." (*Id.*). These allegations are sufficient to satisfy the second prong.

Finally, as to the third element, Defendant argues that Plaintiff fails to adequately allege that the misuse of the corporate form caused Plaintiff injury. (*See* Mot. 16). The Court disagrees. The Complaint alleges that "IOTC Bahamas's purpose is to divert assets and profits away from IOTC USA to protect [Defendant] from creditors and judgments." (Compl. ¶ 25 (alteration

CASE NO. 23-80633-CIV-ALTONAGA/Maynard

added)).  Plaintiff also alleges causation when it states that IOTC USA "has not paid a cent of the $5,000,000.00 federal judgment because its sole member, IOTC Bahamas, has stripped its profits and assets and diverted them to [Defendant] individually."  (*Id.* ¶ 26 (alteration added)).

## IV.  CONCLUSION

For the foregoing reasons it is

**ORDERED AND ADJUDGED** that Defendant, Harry Sargeant, III's Motion to Dismiss **[ECF No. 28]** is **DENIED**.

**DONE AND ORDERED** in Miami, Florida, this 19th day of September, 2023.

**CECILIA M. ALTONAGA**
**CHIEF UNITED STATES DISTRICT JUDGE**

cc:     counsel of record