**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

SUPREME FUELS TRADING FZE, a
United Arab Emirates company,

       Plaintiff,                           CASE NO.: 9:23-cv-80633-CMA

v.

HARRY SARGEANT, III, a Florida citizen

       Defendant.

_____/

**PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND INCORPORATED
MEMORANDUM OF LAW**

Plaintiff Supreme Fuels Trading FZE ("Plaintiff"), by and through undersigned counsel, pursuant to the Federal Rule of Civil Procedure 56 and S.D. Fla. Local Rule 56.1, hereby files its Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion for Summary Judgment"). In support thereof, Plaintiff has simultaneously filed its Statement of Undisputed Material Fact (the "Statement") [ECF No. 34].

**INTRODUCTION AND BACKGROUND FACTS**

1. On April 11, 2023, Plaintiff filed its Complaint in Proceedings Supplementary to Execution pursuant to Federal Rule of Civil Procedure 69 and Florida Statutes §56.29 (the "Complaint") [ECF No. 1] seeking to hold defendant Harry Sargeant, III ("Defendant") liable as an alter ego for the Judgment entered in the action styled *Supreme Fuels v. International Oil Trading Company, LLC, et al.*, Case No.: 9:08-81215-ALTONAGA (the "Main Action") [Main Action, ECF No. 168].

2. The original Complaint in the Main Action [Main Action, ECF No. 1] was filed on October 21, 2008, and alleged a conspiracy "to bribe key Jordanian government officials to ensure that defendants would be the sole recipients of more than one billion dollars [sic] worth of U.S. government contracts for the supply of fuels to the U.S. military in Iraq. *Id.* ¶ 1. Defendant was one of the original defendants sued by Plaintiff in the Main Action. *Id.* On May 5, 2011, pursuant to the

parties' settlement agreement [Main Action, ECF Nos. 118, 123, 150], the court entered an Amended[1] Final Judgment [Main Action, ECF No. 168] against International Oil Trading Company, LLC ("IOTC USA") in the amount of $5,000,000.00. The terms of the settlement agreement required IOTC to pay Plaintiff $5,000,000.00, "whereupon the parties would dismiss the action and release their claims that had been or could have been brought in the instant litigation." [Main Action, Sealed Order ECF No.214]. IOTC did not make any payments to Plaintiff and instead appealed the court's determination that the settlement agreement was enforceable on June 3, 2011. *Id.; see also* Sealed Notice of Appeal [Main Action, ECF No. 176].

3.      On June 29, 2011, Plaintiff moved to reopen the case [Main Action, ECF No. 186] to enforce the terms of the disputed settlement agreement. Because IOTC never made any payments to Plaintiff, "**no releases were ever granted**" as to the remaining Defendants, including the Defendant in the instant proceeding [Main Action, Sealed Order ECF No. 214] (emphasis added). On August 7, 2012, the Eleventh Circuit dismissed IOTC's appeal for lack of jurisdiction since the district court had not yet resolved the rights and liabilities of the other Defendants [ECF No. 219].

4.      Stated simply, Defendant, defrauded the Plaintiff by agreeing to a settlement of the Main Action, whereby IOTC was going to be the only payor of the settlement proceeds, in order to avoid the Main Action from going forward against him knowing full well that IOTC would never fulfill its end of the bargain. As of the date of the filing of this Response, IOTC has not made any payments towards the Judgment, the ultimate order of any court.

5.      On September 8, 2021, Plaintiff filed its Motion to Commence Proceedings Supplementary to Execution and for Related Relief [Main Action, ECF No. 248]. On September 10, 2021, the court entered an Order [Main Action, ECF No. 249] granting the Motion and directing the Plaintiff to file the Complaint that is the subject of this action which was originally filed in the Main Action [ECF No. 272] and then the court entered a sua sponte Order [Main Action, ECF No. 273] directing the Clerk of the Court to open a new case showing the Complaint [Main Action, ECF No. 272] appearing as the operative pleading in the instant proceeding.

6.      On July 5, 2023, Defendant filed a Motion to Dismiss raising several legal arguments [ECF No. 25]. On September 19, 2023, the Court denied the Motion to Dismiss [ECF No. 30].

---

[1] On May 6, 2011, the court entered an Order [Main Action, ECF No. 167] noting that because the settlement agreement required payment only from IOTC, the court would amend the final judgment to remove Defendant as a judgment debtor.

## MEMORANDUM OF LAW

### I. SUMMARY JUDGMENT STANDARD

Summary judgment is proper when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 258 (1986); *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992). The burden of showing the absence of any such genuine issue rests with the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Electric Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial." *Id.* at 587.

On motion for summary judgment, the Court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Any factual disputes will be resolved in the non-moving party's favor when sufficient competent evidence supports the non-moving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the non-moving party's favor when that party's version of events is supported by uncertain or incompetent evidence)*; see also Nakava, LLC v. S. Pac. Elixir Co.*, 19-CV-81128, 2020 WL 4601641, at *4 (S.D. Fla. Aug. 10, 2020) ("A nonmoving party may not manufacture a dispute of fact merely to defeat a motion for summary judgment.") *(internal citation omitted); Reinhold v. Durango Steakhouse of Titusville, Inc.*, 605CV1090ORL22JGG, 2006 WL 8439306, at *3 (M.D. Fla. Dec. 26, 2006) (recognizing that "[there is no genuine issue for trial unless the non-moving party establishes, through the record presented to the court, that it is able to prove evidence sufficient for a jury to return a verdict in its favor.") *(emphasis added) (internal citation omitted)*; *Bank of Am., N.A. v. Louis*, 2012 WL 12905987, at *4 (M.D. Fla. Dec. 20, 2012) ("An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party.").

### II. THE EVIDENCE CONCLUSIVELY ESTABLISHES THAT DEFENDANT IS THE ALTER EGO OF THE MAIN ACTION'S JUDGMENT DEBTOR INTERNATIONAL OIL TRADING COMPANY, LLC

"In the context of a supplementary proceeding, alter ego/veil-piercing is a standalone cause of action to hold supplemental defendants liable to the same extent as the judgment debtor." *Tropical*

*Paradise Resorts, LLC v. JBSHBM, LLC*, 343 F.R.D. 443, 450 (S.D. Fla. 2023). To pierce the corporate veil under Florida law, the plaintiff must allege the following three elements:

> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the shareholders were in fact alter egos of the corporation;
>
> (2) the corporate form must have been used fraudulently or for an improper purpose; and
>
> (3) The fraudulent or improper purpose caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (emphasis in original; citations omitted).

As to the first factor, Florida courts have held that for the alter ego/mere instrumentality element, the following factors are to be considered: (i) domination by a single or few shareholders; (ii) failure to follow corporate formalities; (iii) commingling of corporate and personal affairs; and (iv) inadequate capitalization. *See Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So. 2d 1141, 1151-52 (Fla. 3d DCA 1995) (citations omitted). As to the second factor, Florida courts have held that using the corporation for improper conduct includes the following factors: (i) mere device or sham; (ii) fraudulent or illegal purpose; (iii) use for fraudulent purposes; and (iv) used to frustrate creditors such us to perpetrate a fraud upon them or to evade existing personal liability. *See Steinhardt v. Banks*, 511 So. 2d 336, 339 (Fla. 4th DCA 1987). Finally, as to the third factor, and this Court already held Plaintiff established causation because IOTC USA "has not paid a cent of the $5,000,000.00 federal judgment because its sole member, IOTC Bahamas, has stripped its profits and assets and diverted them to [Defendant] individually." *Supreme Fuels Trading FZE v. Sargeant*, 23-80633-CIV, 2023 WL 6121909, at *7 (S.D. Fla. Sept. 19, 2023).

Here, the evidence set forth in the Undisputed Statement of Facts provides that:

- Defendant, as the ultimately beneficial owner and sole Manager of IOTC USA controls IOTC USA. Statement ¶ 2.

- IOTC USA had Net Income of **$133,569,357.00** from the DESC contracts during the period of 2005 through 2010 whereas the revenues were **$1.95 billion**. Statement ¶ 6.

- Defendant caused IOTC USA, IOTC Bahamas formerly known as IOTC Dubai, and IOTC Netherlands to loot IOTC USA from all of its assets in order to defraud its creditors. Statement ¶¶ 2, 7-10.

- IOTC USA never sought to collect the **$183,875,399.29** account receivable from IOTC Netherlands as depicted in IOTC USA's General Ledger through August 31, 2015. Statement ¶ 11.

- IOTC Bahamas was used as Defendant's personal wallet in which it paid **$10.6 million** in disbursement to partially pay the purchase price of a Superyacht sought to be acquired by Defendant. Statement ¶ 12.

- IOTC Bahamas also paid $4.4 million, and likely the entirety of a **$9.4 million** construction loan given to Defendant by Comerica Bank to pay the balance of **the $20.9 million** Superyacht. Statement ¶ 14.

- IOTC Bahamas paid the legal fees of Defendant and IOTC USA in various litigations in which it was not a party, to the tune of at least **$2,076,639.30.** Statement ¶ 13.

- IOTC Bahamas made payments towards Defendant's private security team as well as paid Defendant's personal credit cards. Statement ¶ 15.

- Defendant exercised his dominion control over IOTC USA to cause the diversion of **$170,618.943.05** of IOTC USA's income in DESC to IOTC Netherlands, which instead of paying the account receivable to IOTC USA sent most of those funds to IOTC Bahamas. Statement ¶ 16.

- Defendant exercised his dominion control over IOTC USA to cause the diversion of **$9,681.615.00** of IOTC USA's income in DESC to bank accounts held by Defendant and his wife. Statement ¶ 17.

- Defendant exercised his dominion and control over IOTC USA to divert the total sum of **$180,350,558.05** to IOTC Bahamas and the Defendant's tenancy by the entirety bank account. Statement ¶ 18.

- As a result of the complex corporate shell game deployed by Defendant, IOTC USA does not have any assets of any kind that can be available to satisfy the Judgment. Statement ¶ 19.

- A Florida jury, and Florida Fourth District Court of Appeal, have already found and affirmed that Defendant used IOTC USA for a fraudulent purpose. Statement ¶ 20.

The evidence in this case reveals that Sargeant controls IOTC Bahamas, and that IOTC Bahamas controls and dominates IOTC USA as its sole member and owner. *See Mile High Healthcare Analytics, LLC v. Med. Care Consortium Inc.*, No. 18-cv-22374, 2020 WL 9460325, at *3 (S.D. Fla. July 29, 2020) (finding allegations satisfied control element where the entities were allegedly operated "in tandem" as "shell companies . . . under the direction and ownership of" the same individual (alterations added; citations and quotation marks omitted)).

Moreover, the evidence shows that Defendant used his control and dominion over IOTC USA to leave it inadequately capitalized (with no assets whatsoever) to pay its creditors, including

Plaintiff, by diverting the sum of **$180,350,558.05** using a complex web of shell companies which are also beneficially owned and controlled by him.  Moreover, Defendant used IOTC USA's corporate income to pay for his luxurious lifestyle including the purchase price of **$20.9 million** Superyacht, private security team, personal credit cards, and personal private security team, as well as receiving at least **$9,681,615.00** in IOTC USA's funds into the personal bank account Defendant held with his wife as tenants by the entirety.

Additionally, as this Court already held, Plaintiff was damaged by Defendant's misuse of the IOTC USA, and its related shell entities, IOTC Bahamas and IOTC Netherlands, corporate form because the shell game employed by Defendant had the effect of diverting IOTC USA's assets and profits away from IOTC USA to protect it from creditors and judgments.  Lastly, the evidence here reveals that Plaintiff has also established causation because IOTC USA has not paid anything towards the Judgment.  Statement ¶ 1.

**CONCLUSION**

**WHEREFORE**, Plaintiff, Supreme Fuels Trading FZE, respectfully requests that the Court enter an Order: (i) granting this Motion for Summary Judgment; (ii) finding that Defendant Harry Sargeant, III is the alter ego of Judgment Debtor International Oil Trading Company, LLC; (iii) entering a Final Judgment against Defendant Harry Sargeant, III for $5,000,000.00 plus pre-judgment interest from May 5, 2011[2] to present and post-judgment interest; (iv) award Plaintiff its reasonable attorney's fees and costs pursuant to §57.115, Fla. Stat. as applied pursuant to Federal Rule of Civil Procedure 69; and (v) award any other further relief that the Court deems just and proper.

Dated: December 18, 2023        Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
777 Arthur Godfrey Road, Suite 402
Miami Beach, Florida 33140
E-mail: rodrigo@rdasilvalaw.com
Telephone:      (305) 615-1434
Facsimile:      (305) 615-1435

By: */s/ Rodrigo S. Da Silva*
     Rodrigo S. Da Silva, Esq.
     *Counsel for Plaintiff, Supreme Fuels Trading FZE*

---

[2] This is the date of entry of the Amended Final Judgment against International Oil Trading Company, LLC, the Judgment Debtor in the Main Action.