## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

SUPREME FUELS TRADING FZE, a
United Arab Emirates company,

     Plaintiff,

                                   Case No.: 9:23-cv-80633-CMA

v.

HARRY SARGEANT III, a Florida citizen,

     Defendant.

_____/

## HARRY SARGEANT III'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... i

TABLE OF AUTHORITIES ........................................................................................... ii

I.    INTRODUCTION ................................................................................................ 1

II.   FACTUAL & PROCEDURAL BACKGROUND ................................................ 2

     A.  IOTC USA's Structure and History ........................................................... 2

     B.  The Instant Action ....................................................................................... 3

III.  LEGAL STANDARD ......................................................................................... 4

IV.  ARGUMENT ...................................................................................................... 5

     A.  HS3 is Not IOTC USA's Alter Ego .......................................................... 5

        1.   HS3 Does Not Dominate or Control IOTC USA ............................. 7

        2.   IOTC USA's Corporate Form Was Not Used for a Fraudulent Purpose and Plaintiff Fails to Prove Causation ........................................................... 10

     B.  The Motion Fails to Address Any of HS3's Defenses .............................. 13

        1.   Plaintiff's Claim is Barred by Res Judicata .................................... 13

        2.   Plaintiff's Claim is Barred by the Statute of Limitations and Laches ............. 15

        3.   Plaintiff, Having Elected to Enforce the Settlement, Waived its Claims Against HS3, and is Equitably Estopped from Asserting its Alter Ego Claim 18

        4.   Plaintiff Failed to Exhaust its Remedies and Mitigate its Damages ............. 19

     C.  The Motion Should be Denied Under Federal Rule of Civil Procedure 56(d) ......... 20

V.   CONCLUSION ................................................................................................. 20

4888-9609-5384.6

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acheron Portfolio Tr. v. Mukamal as Tr. of Mut. Benefits Keep Pol'y Tr.*, No. 18-CV-25099, 2021 WL 7368630, at \*25 (S.D. Fla. Sept. 24, 2021) .......................................................... 14

*Acquisition Corp. of Am. v. Am. Cast Iron Pipe Co.*, 543 So. 2d 878 (Fla. 1st DCA 1989) .......... 6

*Advertects, Inc. v. Sawyer Industries, Inc.*, 84 So. 2d 21 (Fla. 1955) ............................................ 7

*AKF Inc. v. Sonny's Enters. LLC*, No. 19-CV-62379, 2020 WL 43219 (S.D. Fla. Jan. 3, 2020)  11

*Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc.*, 688 F. Supp. 1516 (S.D. Fla. 1988) .................. 19

*Ally v. Naim*, 581 So. 2d 961 (Fla. 3d DCA 1991) .................................................................... 7, 8

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) .................................................................. 4

*Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576 (1st Cir. 1995) .......................... 14, 15

*Armour v. Monsanto Co.*, 995 F. Supp. 2d 1273 (N.D. Ala. 2014) .............................................. 19

*Austin v. Niblick*, 666 F. App'x 547 (7th Cir. 2016)................................................................... 17

*Barbe v. Villeneuve*, 505 So. 2d 1331 (Fla. 1987) ..................................................................... 18

*Bell v. Reine*, 305 Fed. App'x 542 (11th Cir. 2008) .................................................................. 16

*BEO Mgmt. Corp. v. Horta*, 314 So. 3d 434 (Fla. 3d DCA 2020) (reversing ...................... 8, 9, 13

*Bueno v. Workman*, 20 So. 3d 993 (Fla. 4th DCA 2009) ............................................................. 19

*Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835 (Fla. 4th DCA 2001) .. 16

*Castillo v. Cessna Aircraft Co.*, 712 F. Supp. 2d 1306 (S.D. Fla. 2010)...................................... 5

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) .............................................................................. 5

*Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114 (Fla. 1984)................................. 6, 7, 8, 10

*Demyan v. Sun Life Assurance Co. of Canada*, 148 F. Supp. 2d 1316 (S.D. Fla. 2001)................ 5

*Drone Nerds Franchising, LLC v. Childress*, No. 19-cv-61153, 2021 WL 6620674 (S.D. Fla. Nov. 15, 2021) ....................................................................................................................... 6

*Gaines v. Gaines*, 870 So. 2d 187 (Fla. 4th DCA 2004)............................................................. 17

*Gantz v. First Nat. Bank of Miami*, 138 So. 2d 367 (Fla. 3d DCA 1962) ................................... 20

*Garcia v. Guerra*, 738 So. 2d 459 (Fla. 3d DCA 1999) ........................................................ 17, 18

*Gasparini v. Pordomingo*, 972 So. 2d 1053 (Fla. 3d DCA 2008) ................................................ 6

*Gleason v. Leadership Housing, Inc.*, 327 So. 2d 101 (Fla. 4th DCA 1976) ........................ 18, 19

*Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204 (11th Cir. 2017)............................... 3, 12

*Hancock Bank v. Hill St., L.L.C.*, No. 3:13-CV-71-J-25MCR, 2014 WL 12576792, at \*3 (M.D. Fla. July 8, 2014) .............................................................................................................. 13

*Hilliard v. Gutierrez*, No. 21-CV-20513, 2021 WL 2712122 (S.D. Fla. July 1, 2021).............. 13

4888-9609-5384.6

*Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So. 2d 1141 (Fla. 3d DCA 1995) .............. passim

*In re Air Crash near Rio Grande Puerto Rico On Dec. 3, 2008, No. 11-M*, D-02246-KAM, 2013 WL 1729385 (S.D. Fla. Apr. 22, 2013) ................................................................................ 6

*In re Hall*, 651 B.R. 62 (Bankr. M.D. Fla. 2023) .......................................................... 7

*In re Hillsborough Holdings Corp.*, 166 B.R. 461 (Bankr. M.D. Fla. 1994) ........................... 5, 6

*In re Ryan*, No. 8-19-70203-LAS, 2022 WL 4486736 (Bankr. E.D.N.Y. Sept. 27, 2022) ............ 7

*James Dar, LLC v. OJ Commerce.com, Inc.*, No. 21-61901-CIV, 2023 WL 418666 (S.D. Fla. Jan. 11, 2023) ....................................................................................................... 11, 19

*Jang v. United Techs. Corp.*, 206 F. 3d 1147 (11th Cir. 2000) ...................................... 13

*Keith v. Aldridge*, 900 F.2d 736 (4th Cir. 1990) ....................................................... 18

*Leal v. Deutsche Bank Nat. Tr. Co.*, 21 So. 3d 907 (Fla. 3d DCA 2009) .............................. 13

*Macuba v. Deboer*, 193 F.3d 1316 (11th Cir. 1999) ..................................................... 5

*McCray v. State*, 699 So. 2d 1366 (Fla. 1997) ......................................................... 17

*Mile High Healthcare Analytics, LLC v. Med. Care Consortium Inc.*, No. 18-CV-22374, 2020 WL 9460325 (S.D. Fla. July 29, 2020) ................................................................... 5

*Milliken & Co. v. Haima Grp. Corp.*, 654 F. Supp. 2d 1374 (S.D. Fla. 2009) ......................... 16

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330 (11th Cir. 2011) ....................... 6, 7

*Nadd v. Le Credit Lyonnais, S.A.*, 804 So. 2d 1226 (Fla. 2001) .................................... 16

*NLRB v. Deena Artware, Inc.*, 361 U.S. 398 (1960) ...................................................... 6

*Orr v. Allen-Hanford, Inc.*, 27 So. 2d 823 (Fla. 1946) ................................................ 17

*R&R adopted*, 2022 WL 354241 (Feb. 7, 2022) ........................................................... 14

*Ren-Cris Litho, Inc. v. Vantage Graphics, Inc.*, 107 F.3d 4 (2d Cir. 1997) .......................... 14, 15

*Roberts' Fish Farm v. Spencer*, 153 So. 2d 718 (Fla. 1963) .......................................... 10

*Rosenberg v. U.S. Bank*, 360 So. 3d 795 (Fla. 3d DCA 2023) .......................................... 16

*Salinas v. Ramsey*, 234 So. 3d 569 (Fla. 2018) ....................................................... 16

*SE Prop. Holdings, LLC v. Phillips*, No. 3:15CV554/MCR/EMT, 2016 WL 11529614 (N.D. Fla. May 4, 2016) ...................................................................................................... 5, 6

*Singh v. Caribbean Airlines Ltd.*, No. 13-20639-CIV, 2013 WL 12104922 (S.D. Fla. Dec. 2, 2013) ............................................................................................................ 20

*Snook v. Tr. Co. of Ga. Bank of Savannah*, 859 F.2d 865 (11th Cir. 1988) ........................... 20

*State v. Harris*, 881 So. 2d 1079 (Fla. 2004) ......................................................... 18

*Sutherland v. Boehringer-Ingelheim Pharms., Inc.*, No. 8:14-CV-2741-T-17TBM, 2016 WL 1092641 (M.D. Fla. Mar. 21, 2016) .................................................................... 5, 9, 11

*Taser Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 16-cv-366, 2023 WL 2523447 (M.D. Fla. Mar. 14, 2023) ............................................................................................................. 6

4888-9609-5384.6

*Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242 (Fla. 2d DCA 1995) ........ 16

*United States v. Bestfoods*, 524 U.S. 51 (1998) ......................................................... 5, 6

*United States v. Jones*, 29 F.3d 1549 (11th Cir. 1994) ...................................... 3, 5, 8, 12

*Winter v. Allstate Mortg. Corp. of Fla.*, 303 So. 2d 399 (Fla. 3d DCA 1974) ............................ 17

*Young v. McKenzie*, 46 So. 2d 184 (Fla. 1950)................................................................. 16

**Statutes**

Fla. Stat. § 95.11(2)(a) ................................................................................. 15, 16, 17

**Rules**

Fed. R. Civ. P. 56(a) ................................................................................................. 4

Fed. R. Civ. P. 56(c)(2)............................................................................................ 5

Fed. R. Evid. 201(b)(2) ............................................................................................ 3

Federal Rule of Civil Procedure 8 ........................................................................... 5

Federal Rule of Civil Procedure 19 ......................................................................... 7

Federal Rule of Civil Procedure 56 ......................................................................... 1

Federal Rule of Civil Procedure 56(d)................................................................. 2, 20, 21

4888-9609-5384.6

Defendant Harry Sargeant III ("HS3"), through his undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, hereby files this Opposition to Plaintiff Supreme Fuels Trading FZE's ("Plaintiff") Motion for Summary Judgment and Incorporated Memorandum of Law (ECF No. 35, the "Motion") and states as follows in support:[1]

## I.   INTRODUCTION

Without serving any discovery – including Plaintiff's own initial disclosures[2] – and relying on inadmissible and unauthenticated hearsay, Plaintiff asks this Court to enter summary judgment against HS3, finding, as a matter of law, that HS3 is the alter ego of International Oil Trading Company, LLC ("IOTC USA"). The Motion must be denied for the following reasons:

*First*, HS3 did not exercise complete dominion or control over IOTC USA. Indeed, he is not even a member of IOTC USA; IOTC USA is 100% owned by International Oil Trading Company, Ltd. ("IOTC Bahamas").[3] HS3 SUF, ¶¶ 2, 24. IOTC USA maintained corporate formalities and an independent existence separate and apart from HS3.

*Second*, as is made clear in HS3's Opposition ("HS3 SUF," filed simultaneously herewith) to the Plaintiff's Statement of Undisputed Material Facts (ECF No. 34, "Plaintiff's SUF"), IOTC USA was not created for a fraudulent purpose or used to mislead or defraud Plaintiff. IOTC USA was established as a special purpose entity to complete contracts with the United States Defense Energy Support Center (now known as Defense Logistics Agency Energy ("DLA Energy")). Indeed, when a dispute arose regarding payment on the DLA Energy contracts, the Inspector General of the Department of Defense (the "IG") conducted an investigation into IOTC USA and found no fraud vulnerabilities. Nor was IOTC USA's corporate structure used to defraud or mislead Plaintiff. IOTC USA agreed to settle claims with Plaintiff pursuant to mutually agreeable releases, but IOTC USA and Plaintiff never agreed on the scope of those releases, thus IOTC USA contended there was no settlement. This is not fraud.

*Third*, Plaintiff's Motion does not address HS3's valid defenses, which preclude summary judgment. In his Answer and Defenses to Plaintiff's Complaint in Proceedings Supplementary to Execution (ECF No. 31, the "Answer"), HS3 sets forth defenses, including at least eight defenses

---

[1] HS3 reserves his right to seek summary judgment prior to the February 6, 2024, deadline (*see* ECF No. 23). This Opposition is not a cross-motion for summary judgment, as Plaintiff's responses to HS3's discovery requests are needed to support several of HS3's defenses, and thus HS3's own motion for summary judgment remains outstanding.
[2] Plaintiff's initial disclosures were due July 31, 2023. ECF No. 17. Plaintiff did not serve its initial disclosures until December 20, 2023 (*see* ECF No. 32 ¶ 1), *after* it filed the Motion.
[3] HS3 also is not a shareholder in IOTC Bahamas. HS3 SUF, ¶ 25.

1

that each independently warrant denial of the Motion as set forth in Section IV.B., *infra*.

*Fourth*, Plaintiff's Motion should be denied, or alternatively a ruling should be deferred, under Federal Rule of Civil Procedure 56(d), as Plaintiff's responses to HS3's interrogatories and requests for production of documents relevant to HS3's defenses remain outstanding.

Because Plaintiff's Motion and SUF fail to establish the absence of a genuine dispute as to any material facts or that HS3 is, as a matter of law, IOTC USA's alter ego, it should be denied.[4]

## II.   FACTUAL & PROCEDURAL BACKGROUND

### A. IOTC USA's Structure and History.

IOTC USA is a manager-managed Florida limited liability company that was formed in January 2005. HS3 SUF, ¶¶ 2, 21. It is a wholly-owned subsidiary of IOTC Bahamas. *Id.*, ¶ 24. HS3 is not a member of IOTC USA and is not a shareholder of IOTC Bahamas. *Id.* ¶¶ 23, 25. IOTC USA was established as a special purpose entity to pursue and fulfill fuel transportation contracts with DLA Energy. *Id.* ¶¶ 3, 36. At formation, it was adequately capitalized for this purpose. *Id.* ¶ 37. IOTC USA elected to obtain a credit facility with ABN Amro Bank N.V. ("ABN Amro") to help finance the complex, ongoing operations required under the DLA Energy contracts. *Id.* ¶ 38. Because ABN Amro is a Dutch bank, it required the credit facility to be entered into by a Dutch entity, thus International Oil Trading Company BV ("IOTC Netherlands") was formed as a sister company to IOTC USA, to utilize the credit facility to service the DLA Energy contracts. *Id.* ¶ 39. To secure the loan, IOTC USA provided a $150 million guarantee to ABN Amro, and ABN Amro required IOTC USA to assign to ABN Amro IOTC USA's rights to the payment proceeds from DLA Energy. *Id.* ¶ 40. DLA Energy thus made its contractual payments to ABN Amro, and IOTC Netherlands recorded these funds as accounts payable on its corporate books. *Id.* ¶¶ 41, 42. Likewise, IOTC USA recorded accounts receivable from IOTC Netherlands to reflect DLA Energy's payments. *Id.* ¶ 43. In 2008, a dispute regarding payments for IOTC USA's services arose between IOTC USA and DLA Energy, leading to an investigation by the IG. *Id.* ¶ 44. After

---

[4] This case represents Plaintiff's counsel, Rodrigo Da Silva's, latest effort to waste judicial resources on baseless litigation against HS3, including in this District. For example, Da Silva filed a self-styled "RICO action" against HS3, his wife, and others involving two iterations of a more than 100-page, 400-paragraph complaint containing frivolous and disparaging allegations against HS3, including discredited bribery allegations, unfounded allegations about HS3's personal life, and other defamatory allegations. *See Worldspan Marine Inc. et al. v. Comerica Bank et al.*, No. 1:18-cv-21924, ECF No. 1, ¶ 221. The Eleventh Circuit upheld the court's dismissal of *Worldspan* with prejudice as an impermissible "shotgun pleading," emphasizing that Da Silva's amended complaint "was replete with unnecessary information about non-parties, extraneous references to other lawsuits involving [HS3], and bare legal conclusions," and "contained relatively few improvements" from the earlier complaint the district court warned was a shotgun pleading for the same reasons. *Worldspan*, No. 20-11646, 2021 WL 5882006, at *2 (11th Cir. Dec. 13, 2021).

an eight-year investigation, in 2016, the IG closed its investigation, noting specifically no fraud vulnerabilities were identified, and declined to take judicial or administrative action against IOTC USA. *Id.* ¶ 45, Ex. 2.

IOTC USA followed corporate formalities consistent with, and typical of, a special purpose entity. *Id.* ¶ 36. For example, IOTC USA:

- maintains a registered agent in Florida (*id.* ¶ 31);
- has always filed its required annual report (*id.* ¶ 31);
- has an employer identification number (*id.* ¶ 33);
- has an operating agreement (*id.* ¶ 33);
- filed a certificate of fictitious name with the Florida Secretary of State to operate under the name IOTC USA (*id.* ¶ 22);
- maintained a corporate book, corporate minutes, balance sheets, financial statements, and a bank account (*id.* ¶¶ 32);
- has passed various formal resolutions regarding its operations (*id.* ¶ 34);
- owned inventory (*id.* ¶ 35); and
- maintained insurance, including defense base act insurance (*id.* ¶ 35).

IOTC USA also is not owned, much less dominated or controlled, by HS3. Although HS3 currently is the manager of IOTC USA, HS3 never exercised sole control over IOTC USA's bank accounts. *Id.* ¶ 26. Rather, IOTC USA's Chief Financial Officer, Treasurer, and Vice President, Kevin Kirkeide, was responsible for making all transfers from IOTC USA's bank account. *Id.* ¶ 27. Nor did HS3 comingle his own funds with those of IOTC USA. *Id.* ¶ 26. HS3 also was not solely responsible for hiring, firing, or contracting on behalf of IOTC USA; Mr. Kirkeide and Mustafa Abu Naba'a also could perform these functions. *Id.* ¶ 28.

## B. The Instant Action.

In 2008, over *fifteen years ago*, but three years after IOTC USA was formed, the Plaintiff initiated an action styled *Supreme Fuels Trading FZE v. Harry Sargeant, III, et al.*, Case No. 9:08-cv-81215 (S.D. Fla.) against IOTC USA, International Oil Trade Center, Mustafa Abu-Naba'a, and HS3, alleging various state and federal law violations (the "Original Action"). *See* Original Action, ECF No. 85-1; Plaintiff's SUF, ¶ 1.[5] With a motion to dismiss the Plaintiff's baseless

---

[5] The Court may take judicial notice of the existence of the Original Action and the filings therein because such documents are public records that are not subject to reasonable dispute since they are capable of accurate and ready determination from sources whose accuracy cannot reasonably be questioned. Fed. R. Evid. 201(b)(2). The Court may not take judicial notice of the facts alleged in the Original Action's filings, or factual findings from any other action. *Grayson v. Warden, Comm'r, Ala. DOC*, 869 F.3d 1204, 1225 (11th Cir. 2017); *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) ("If it were permissible for a court to take judicial notice of a fact merely because it has been found to be true in some other action, the doctrine of collateral estoppel would be superfluous" and also holding Court's factual findings from prior suit did not fall under exception to hearsay rule).

3

complaint pending (Original Action, ECF No. 98), the parties mediated their dispute. *Id.*, ECF No. 123. At the mediation, the parties agreed ***IOTC USA*** would pay the Plaintiff $5 million to settle the Original Action in exchange for a complete release and dismissal with prejudice of all defendants. *Id.*, ECF No. 128, p. 3. The parties were unable to finalize the terms of the settlement, specifically the scope of the release, thus Plaintiff filed a motion to enforce the settlement (*id.*), which the Court granted. *Id.*, ECF No. 150.

Importantly, as Plaintiff recognized in its motion to enforce the settlement, IOTC USA, and not any other defendant, was solely responsible for the settlement payment. *Id.*, ECF Nos. 128, p. 3 ("***Defendant IOTC [USA]*** . . . will pay [Plaintiff] $2 million by November 15, 2010 . . . ")[6]; 150, p. 1; Plaintiff's SUF, ¶ 1. The Court likewise acknowledged that the settlement agreement "does not provide that any other defendant [besides IOTC USA] is responsible for making the payment." Original Action, ECF No. 167, p. 1. The Court "carefully considered" the Plaintiff's argument "that Mr. Sargeant . . . [is] jointly responsible for making the $5 million payment" and found the argument "without merit." *Id.* n. 1. Accordingly, on May 6, 2011, the Court entered the Judgment against IOTC USA only. *Id.*, ECF No. 168; Plaintiff's SUF, Ex. A.

On September 8, 2021, Plaintiff began its series of meritless attempts to assert an alter ego claim against HS3, which culminated in the filing of the Complaint. *See* Original Action, ECF Nos. 248, 250, 252, 270, 272. On April 11, 2023, the Court entered an order holding that, via the Complaint, the "Plaintiff is commencing a new case; indeed, Plaintiff does not explain how it can file a complaint with a new claim of alter ego liability against [HS3] in this long-since closed case." *Id.*, ECF No. 273. Accordingly, the Court transferred the Complaint to a new case, directing the Clerk to open this action. *Id.* HS3 ultimately answered the Complaint, and, on December 22, 2023, served interrogatories and requests for production on Plaintiff. HS3 SUF, ¶ 50, Exs. A -C.

On December 19, 2023, without serving any discovery (including its initial disclosures), Plaintiff filed the Motion and its SUF, asking the Court to disregard IOTC USA's corporate structure and find HS3 – who is not even a member of IOTC USA – is IOTC USA's alter ego. As set forth below, the Motion should be denied.

### III.   LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

---

[6] All emphasis in quoted material contained herein is supplied unless otherwise noted.

Civ. P. 56(a). Summary judgment should be denied if, considering all evidence in the light most favorable to the non-moving party, "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* at 255.

The moving party bears the burden of identifying specific portions of the record demonstrating the absence of genuine issues of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Materials relied on to support summary judgment must be capable of admission in evidence. Fed. R. Civ. P. 56(c)(2) & Advisory Comm. Notes ("The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated."). "The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial." *Demyan v. Sun Life Assurance Co. of Can.*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001); *see also Macuba v. Deboer*, 193 F.3d 1316, 1325 (11th Cir. 1999) (holding court erred in considering hearsay in deciding summary judgment motion); *Castillo v. Cessna Aircraft Co.*, 712 F. Supp. 2d 1306, 1308 n.2 (S.D. Fla. 2010); *Sutherland v. Boehringer-Ingelheim Pharms., Inc.*, No. 8:14-CV-2741-T-17TBM, 2016 WL 1092641, at *5 (M.D. Fla. Mar. 21, 2016), *aff'd*, 700 F. App'x 955 (11th Cir. 2017) (granting summary judgment for defendant where plaintiff's opposition relied only on inadmissible and unauthenticated documents, including filings from another lawsuit against defendant, and holding "the Court may not consider any of the documents attached to the Response for purposes of ruling on the Motion for Summary Judgment"). Nor may the Court judicially notice a fact found in another litigation; such factual findings also are inadmissible hearsay. *Jones*, 29 F.3d at 1553.

## IV.   ARGUMENT

### A.  HS3 is Not IOTC USA's Alter Ego.

"There is no doubt that in Florida, 'courts disregard the corporate entity in only the most extraordinary cases.'" *SE Prop. Holdings, LLC v. Phillips*, No. 3:15CV554/MCR/EMT, 2016 WL 11529614, at *3 (N.D. Fla. May 4, 2016)[7] (quoting *In re Hillsborough Holdings Corp.*, 166 B.R.

---

[7] In *SE Prop. Holdings*, the Court found the complaint plead enough facts to support its reverse veil-piercing claims to survive a motion to dismiss, thus its procedural posture is distinct. The case settled prior to any summary judgment briefing. *SE Prop. Holdings, LLC*, ECF No. 79. The same is true for *Mile High Healthcare Analytics, LLC v. Med. Care Consortium Inc.*, No. 18-CV-22374, 2020 WL 9460325 (S.D. Fla. July 29, 2020), ECF No. 126. Further, in *Mile High*, the Court was addressing the alter ego determinations only to determine whether the complaint impermissibly lumped certain defendants together in violation of Federal Rule of Civil Procedure 8. *Id.* at *3.

5

461, 468 (Bankr. M.D. Fla. 1994), *aff'd*, 176 B.R. 223 (M.D. Fla. 1994)). "It is a general principle of corporate law deeply ingrained in our economic and legal systems" that owners of an entity are "not liable for the acts of [their] subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (citation and quotation marks omitted). Indeed, "[t]he insulation of a stockholder from the debts and obligations of his corporation ***is the norm, not the exception***." *NLRB v. Deena Artware, Inc.*, 361 U.S. 398, 402–03 (1960) (citation omitted); *see also Dania Jai-Alai Palace, Inc. v. Sykes*, 450 So. 2d 1114, 1121 (Fla. 1984). "Thus it is hornbook law that the exercise of the control which stock ownership gives to the stockholders . . . will not create liability beyond the assets of the subsidiary." *Bestfoods*, 524 U.S. at 61 (citation and quotation marks omitted; omission in original). Piercing the corporate veil is an extraordinary remedy and those seeking to do so carry a heavy burden. *See Acquisition Corp. of Am. v. Am. Cast Iron Pipe Co.*, 543 So. 2d 878, 881-82 (Fla. 1st DCA 1989); *In re Hillsborough Holdings Corp.*, 166 B.R. at 468.

> To meet this heavy burden and pierce an entity's corporate veil, a plaintiff must prove:
>
> (1) the *shareholder* dominated and controlled the corporation to such an extent that the corporation's independent existence, was in fact non-existent and the *shareholders* were in fact alter egos of the corporation; (2) the corporate form must have been used fraudulently or for an improper purpose; and (3) the fraudulent or improper use of the corporate form caused injury to the claimant.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011) (quoting *Gasparini v. Pordomingo*, 972 So. 2d 1053, 1055 (Fla. 3d DCA 2008)) (emphasis in *Molinos*).

Importantly, only an owner may be held liable as an alter ego. *Molinos*, 633 F.3d at 1351; *Drone Nerds Franchising, LLC v. Childress*, No. 19-cv-61153, 2021 WL 6620674, at *12-13 (S.D. Fla. Nov. 15, 2021) (alter ego claim could not be asserted against "non-shareholder sister company" of debtor in light of *Molinos* because Eleventh Circuit's interpretation of Florida law is "binding law within the Eleventh Circuit absent a subsequent decision by Florida's appellate courts, an en banc decision of the Eleventh Circuit, or a decision of the U.S. Supreme Court casting doubt on that interpretation."); *In re Air Crash near Rio Grande Puerto Rico On Dec. 3, 2008*, No. 11-MD-02246-KAM, 2013 WL 1729385, at *4 (S.D. Fla. Apr. 22, 2013) (holding *Molinos* "extensively analyzed Florida law on the question of whether stock ownership was a legal prerequisite to alter ego liability" and concluded it is absent a close familial relationship).[8]

---

[8] In its Order on HS3's Motion to Dismiss, the Court noted that *Molinos* left open the possibility of holding a non-owner liable as an alter ego. ECF No. 30, p. 12 (citing *SE Prop. Holdings, LLC*, 2016 WL 11529614, at *4 and *Taser*

4888-9609-5384.6

Plaintiff does not, because it cannot, allege, much less ***prove***, HS3 owns IOTC USA, thus HS3 cannot be its alter ego and the Motion should be denied for this reason alone.[9] Even ignoring this defect, the Motion still fails to set forth competent evidence that HS3 dominated or controlled IOTC USA, or that its corporate form was used for a fraudulent or improper purpose. As set forth below, these failures each warrant denial of the Motion.

### 1. HS3 Does Not Dominate or Control IOTC USA.

To establish an entity was a "mere instrumentality" of its owner, a plaintiff must show the owner "dominated or controlled" the entity to such an extent that the entity became non-existent. *E.g. Molinos*, 633 F.3d at 1349. In making this determination, courts consider various factors, such as: whether the entity follows corporate formalities like keeping corporate records, issuing ownership certificates or stock, and electing officers or directors; whether the entity was adequately capitalized; whether the owner and the entity comingle funds, or the owner uses corporate funds for personal purposes; whether a parent and subsidiary share office space; and the owner's business discretion over the entity. *Hilton Oil Transp. v. Oil Transp. Co., S.A.*, 659 So. 2d 1141, 1151 (Fla. 3d DCA 1995). No one factor is dispositive. Further:

> The mere fact that one or two individuals own and control the stock structure of a corporation does not lead inevitably to the conclusion that the corporate entity . . . is necessarily the alter ego of its stockholders . . . . If this were the rule, it would ***completely destroy the corporate entity*** as a method of doing business and it would ignore the historical justification for the corporate enterprise system.

*Dania Jai-Alai*, 450 So. 2d at 1120 (quoting *Advertects, Inc. v. Sawyer Industries, Inc.*, 84 So. 2d 21 (Fla. 1955)). "Nor does the fact that the corporation's business affairs have been poorly handled, without more, justify piercing the corporate veil." *Hilton Oil Transp.*, 659 So. 2d at 1152 (*citing*

---

*Int'l, Inc. v. Phazzer Elecs., Inc.*, No. 16-cv-366, 2023 WL 2523447, at *2 (M.D. Fla. Mar. 14, 2023)). In *Phillips*, the complaint alleged the individual debtor was an owner, via family trusts, of his alleged alter egos. In *Taser*, the Court noted *Molinos* left open the possibility of alter ego liability where an alleged alter ego's spouse or family is an owner of the debtor and held the defendant's cousin's sham ownership was sufficient to survive a motion for judgment on the pleadings. Here, Plaintiff does not, and cannot, contend HS3's family owns IOTC USA. Further, while *Molinos* may leave open the possibility for "Florida's appellate courts, an en banc decision of the Eleventh Circuit, or a decision of the U.S. Supreme Court" to find ownership is not a prerequisite to alter ego liability, the Eleventh Circuit's *Molinos* decision remains binding on this Court. *See Drone Nerds Franchising, LLC*, 2021 WL 6620674, at *12-13.

[9] To the extent Plaintiff contends IOTC USA is IOTC Bahamas' alter ego, and HS3 is, in turn, IOTC Bahamas' alter ego, this argument faces the same defect, as HS3 is not a shareholder of IOTC Bahamas. HS3 SUF ¶ 25. Plaintiff does not cite any contradictory evidence; this fact is undisputed. *See generally* Plaintiff's SUF. Nor is IOTC Bahamas a party to this action; its corporate veil cannot be pierced without its presence. Answer, Sixth Defense; *In re Hall*, 651 B.R. 62, 72 (Bankr. M.D. Fla. 2023) (holding that, to determine an individual "is liable under an alter ego or veil piercing theory, the Court must necessarily determine the liability of the corporate entity, even if that entity is now defunct or merely a holding company" and finding entity necessary party under Federal Rule of Civil Procedure 19); *accord In re Ryan*, No. 8-19-70203-LAS, 2022 WL 4486736, at *7 (Bankr. E.D.N.Y. Sept. 27, 2022) (citing cases).

7

*Ally v. Naim*, 581 So. 2d 961, 962 (Fla. 3d DCA 1991)).

In *Ally*, the Court held the fact that the entity's "corporate income remaining after all other expenses had been paid went to the defendant as compensation" was insufficient to establish alter ego liability: "The fact that a closely held corporation compensates its sole shareholder and principal employee in the ordinary course of that corporation's business does not, without more, satisfy the tests" for alter ego liability. 581 So. 2d at 963. Similarly, in *Hilton Oil*, the Court reversed the trial court's imposition of alter ego liability even though the entity: did not keep meeting minutes of important events, failed to formalize loans from the owner/alleged alter ego, and owner loaned such funds from his other entities; confessed judgment in favor of the owner in a foreclosure action; was not capitalized "since all of the funds supplied to the entity came in the form of loans supplied by [owner] and/or other corporate entities controlled by [owner]"; used the same office, and had the same owners, officers, and/or directors, as the owner's other entities; and had only one or two employees. *Hilton Oil Transp.*, 659 So. 2d at 1152. Further, the entity's directors acted in the best interest of the owner. *Id.* The Court found these factors did not "either singularly or collectively justify disregarding the corporate entity" and, "[a]t worst" indicated the owner operated the entity "in a loose and haphazard manner which certainly would not justify the imposition of personal liability against him." *Id.*; *see also BEO Mgmt. Corp. v. Horta*, 314 So. 3d 434, 437 (Fla. 3d DCA 2020) (reversing summary judgment and finding owner and entities' comingling funds, and owner using some funds for personal purposes, insufficient to show "entities had no existence independent of [owner]").

Plaintiff's support for its claim that HS3's dominates IOTC USA to such an extent that IOTC USA lacks a separate corporate existence falls far short of what is required under Florida law. Plaintiff contends HS3 is the "ultimately beneficial owner" of IOTC USA, citing paragraph 2 of Plaintiff's SUF. Mot. at 4. Plaintiff's support for this allegation is an unauthenticated filing from another action, which is hearsay and cannot be judicially noticed, and thus may not be considered in deciding the Motion. *See Jones*, 29 F.3d at 1553. More fundamentally, HS3 does not own IOTC USA, nor is he a shareholder of its parent entity, IOTC Bahamas. HS3 SUF ¶ 25. Regardless, ownership alone is insufficient to support alter ego liability, as is HS3's status as IOTC USA's manager. *E.g. Dania Jai-Alai*, 450 So. 2d at 1120.

Plaintiff also contends *IOTC Bahamas'* alleged payment of a construction loan, certain credit card bills, security fees, and legal fees for HS3 shows HS3 dominated *IOTC USA* – a

different entity. Mot. at 5. Nothing connects these payments to IOTC USA, and nothing Plaintiff cites indicates the credit card bills, security, and legal fees were not legitimate business expenses.[10] Regardless, Plaintiff's only support for these allegations are conclusory statements and unauthenticated and inadmissible hearsay; the cited materials cannot be considered in deciding the Motion. *See Sutherland*, 2016 WL 1092641, at *5. Indeed, even Plaintiff acknowledges it cannot prove all its allegations, as it contends it is "likely" IOTC Bahamas paid a part of the construction loan. Mot. at 5. Even ignoring this issue and setting aside the fact that these payments came from ***IOTC Bahamas***, not IOTC USA, *Hilton Oil* and *BEO Mgmt. Corp.* make clear that using an entity's funds for personal purposes is insufficient to show the entity lacked ***any*** separate corporate existence. 659 So. 2d at 1152; 314 So. 3d at 437. "At worst," such payments suggest IOTC Bahamas was operated "in a loose and haphazard manner which certainly would not justify the imposition of personal liability against" HS3. *Hilton Oil Transp.*, 659 So. 2d at 1152.

Next, Plaintiff perfunctorily alleges that HS3 "exercised his dominion control" over IOTC USA to divert its income from DLA Energy to IOTC Netherlands. Mot. at 5. Like all of Plaintiff's other allegations, the support for this contention is inadmissible hearsay than cannot be considered in deciding the Motion. Regardless, these conclusory allegations are demonstrably false. A legitimate and commercially viable rationale supports the financial arrangements between the subject entities. As established, IOTC USA had to assign its right to the payment proceeds from DLA Energy to ABN Amro in order to secure the loan from ABN Amro. HS3 SUF, ¶¶ 40, 41.

Further, Plaintiff's threadbare and conclusory declaration that HS3 exercised dominion and control over IOTC USA to divert its profits from the DLA Energy contracts are meaningless and unsupported by citation to ***any*** material, even inadmissible hearsay. Plaintiff cites paragraphs 16 through 18 of Plaintiff's SUF to support these allegations, but paragraph 16 simply states IOTC Netherlands transferred funds to IOTC Bahamas, citing only an unauthenticated ***chart*** purporting to summarize these transfers. HS3 is not even mentioned, nor is DLA Energy. Likewise, paragraph 17 simply lists transfers purportedly made from IOTC Netherlands and IOTC Bahamas to HS3, again citing unauthenticated charts and incomplete and unauthenticated bank statements. HS3 SUF, ¶ 18. Plaintiff cites nothing to link the referenced funds to IOTC USA's profits from the

---

[10] Most of the legal fees Plaintiff identifies were incurred in *Al-Saleh v. Int'l Oil Trading Co., LLC, et. al.*, Case No. 50-2008-CA-010187 (Fla. 15th Jud. Cir.) (the "Al-Saleh Litigation"), in which IOTC USA was a defendant. A parent entity paying its subsidiary's legal fees is not uncommon and not evidence that the subsidiary is a mere instrumentality of the parent. *See Hilton Oil Transp.*, 659 So. 2d at 1152.

9

DLA Energy contracts. Paragraph 18 fares even worse, it is simply Plaintiff's conclusory and unsupported allegation that HS3 caused IOTC USA to divert its funds to IOTC Bahamas or HS3. Again, though, this paragraph cites nothing to indicate the transferred funds were IOTC USA's in the first place, much less how HS3 purportedly directed these transfers.

Finally, Plaintiff also contends IOTC USA had a net income of *over $130 million* when its revenues were $1.95 billion. Mot. at 4. It is unclear what this contention has to do with HS3, or how IOTC USA's profitability supports HS3's status as a purported alter ego of the entity. Regardless, and again, though, the support for this allegation is inadmissible hearsay that cannot be considered in deciding the motion. *See* Section III, *supra*.

Taking all of Plaintiff's allegations together, and considering Florida's high bar for imposing alter ego liability, Plaintiff fails to show IOTC USA lacked any corporate existence separate and apart from HS3. *See Hilton Oil Transp.*, 659 So. 2d at 1152. To the contrary, IOTC USA followed corporate formalities, like filing its annual report and a certificate of fictitious name; having an operating agreement, articles of incorporation, and a registered agent; maintaining corporate records, such as corporate minutes, balance sheets, financial statements, and a corporate book; passing corporate resolutions and having officers and directors; and maintaining a bank account and insurance. HS3 SUF, ¶¶ 31-35. IOTC USA was not a sham entity, it was formed as a legitimate special purpose entity, and it contracted with an agency of the United States government. *Id.* ¶ 36. HS3 did not comingle his funds with IOTC USA's, nor was he solely responsible for IOTC USA's contracts, business relationships, or bank accounts. *Id.* ¶¶ 26-28. Indeed, HS3 does not even *own* IOTC USA. Therefore, it is clear HS3 did not dominate IOTC USA so completely that it lacked a separate existence. Plaintiff's failure to provide competent evidence sufficient to establish the first alter ego element means the Motion should be denied.

**2.    IOTC USA's Corporate Form Was Not Used for a Fraudulent Purpose and Plaintiff Fails to Prove Causation.**

Separately, Plaintiff fails to show IOTC USA was used for an improper purpose, or that such misuse caused Plaintiff's damages, each of which is required to impose alter ego liability.

The corporate form exists to limit liability, and not every instance in which a business's existence protects its owners from liability is fraud. *Roberts' Fish Farm v. Spencer*, 153 So. 2d 718 (Fla. 1963). "Those who utilize the laws of this state in order to do business in the corporate form *have every right to rely on the rules of law which protect them against personal liability* unless it be shown that the corporation is formed or used for some illegal, fraudulent or other unjust

10

purpose which justifies piercing of the corporate veil." *Id.* at 721; *accord Dania Jai-Alai,* 450 So. 2d at 1121; *see also AKF Inc. v. Sonny's Enters. LLC*, No. 19-CV-62379, 2020 WL 43219, at *3 (S.D. Fla. Jan. 3, 2020) (holding allegation that "immediately after [entity] and [owner] defaulted under the Agreement, [owner] transferred his interest in [second entity] to his wife with the intention of delaying or avoiding payment of amounts due to [plaintiff]" insufficient to state a claim for alter ego liability); *James Dar, LLC v. OJ Commerce.com, Inc.*, No. 21-61901-CIV, 2023 WL 418666, at *6 (S.D. Fla. Jan. 11, 2023) (granting summary judgment for defendants because plaintiff failed to establish fraudulent use of corporation and holding "[t]he fact that [entities] are related entities, have a business relationship, and share an office and officers and directors does not establish any fraud or improper use of the corporate form").

Here, Plaintiff perfunctorily contends HS3 "caused IOTC USA, IOTC Bahamas . . . and IOTC Netherlands to loot IOTC USA from all of its assets in order to defraud its creditors," but Plaintiff cites no ***evidence*** to support this allegation. Mot. at 4 (citing Plaintiff's SUF ¶¶ 2, 7-10).[11] Paragraph 2 of Plaintiff's SUF simply outlines the history of IOTC USA, it has nothing to do with IOTC USA's assets or their "looting." Paragraphs 7 through 9 discuss correspondence between DLA Energy and IOTC USA regarding the entities' business relationship. IOTC USA's letter is from William Mauco. Plaintiff's contention that IOTC USA's letter, which describes the detailed corporate formalities observed by IOTC USA, somehow is suggestive of fraud is nothing more than unsupported conjecture. Plaintiff's bare allegation that the use of a ***services agreement*** between related entities proves misuse of the corporate form is, in a word, nonsense. Plaintiff's SUF, ¶¶ 8-9. If anything, the existence of a services agreement shows the entities observed corporate formalities and transacted at arms-length, negating alter ego liability. *See, e.g., Hilton Oil Transp.*, 659 So. 2d at 1152. Paragraph 10 offers an equally specious explanation of IOTC USA's relationship with IOTC Netherlands and ABN Amro. It was ABN Amro, ***not*** IOTC USA, much less HS3, that required IOTC USA assign its rights to payment from DLA Energy to ABN Amro. HS3 SUF, ¶ 40. This is why DLA Energy paid ABN Amro directly. *Id.* ¶ 41. To account for these payments, and observing yet another corporate formality, IOTC Netherlands recorded these funds as accounts payable on its corporate books, and IOTC USA recorded corresponding accounts receivable from IOTC Netherlands. *Id.* ¶ 42. Likewise, ABN Amro required IOTC

---

[11] Again, the materials cited in Plaintiff's SUF to support these paragraphs are hearsay and may not even be considered in deciding the Motion. *E.g. Sutherland*, 2016 WL 1092641, at *5.

4888-9609-5384.6

Netherlands to receive the loan proceeds. *Id*. ¶ 43. None of the foregoing makes IOTC Bahamas the "ultimate beneficiary" of DLA Energy's payments, nor is it indicative of fraud.

Plaintiff also alleges IOTC USA never sought to collect its account receivable from IOTC Netherlands. Mot. at 4 (citing Plaintiff's SUF, ¶ 11). Paragraph 11 simply alleges IOTC USA and IOTC Netherlands recorded accounts receivable and payable, respectively, as explained above. It does not mention collections *at all*. Regardless, and again, the cited materials cannot be considered in deciding the Motion. *See* Section III, *supra.*

Plaintiff contends the Al-Saleh Litigation "found and affirmed that [HS3] used IOTC USA for a fraudulent purpose." Mot. at 5. This is an astounding misstatement. In the Al-Saleh Litigation, IOTC USA and HS3 both were accused of directly defrauding Mohammad Al-Saleh – the question of whether HS3 *used* IOTC USA for a fraudulent purpose was never before the jury. HS3 SUF, ¶ 20, Ex. W. Nor did the appellate court affirm the fraud finding; it declined to reach the issue because it affirmed the judgment on other grounds. Plaintiff's SUF, Ex. W. Further, the findings in the Al-Saleh Litigation are not judicially noticeable or otherwise appropriately considered in deciding the Motion. *See Grayson*, 869 F.3d at 1225; *Jones*, 29 F.3d at 1553.

Finally, Plaintiff contends IOTC USA agreed to a settlement because it knew it simply would not pay the resulting Judgment. Mot. at 2, 5. Plaintiff has no support for this supposition, which is belied by the procedural history of the Original Action. Specifically, IOTC USA and HS3 vehemently opposed enforcement of the settlement, as they filed an opposition to Plaintiff's motion to enforce the settlement (Original Action, ECF No. 135) and moved to set aside and/or reconsider the Court's order granting the motion to enforce (*id.*, ECF No. 153). IOTC USA even appealed the order to the Eleventh Circuit *Id.*, ECF Nos. 176, 216-220; Mot., ¶ 2 (noting IOTC USA "appealed the court's determination that the settlement agreement was enforceable"). It defies logic to point out IOTC USA's efforts to avoid enforcement of the settlement agreement and then contend IOTC USA agreed to the settlement knowing full well it would not pay. Mot., ¶ 4. Put plainly, had IOTC USA "know[n] full well that [it] would never fulfill its end of the bargain" (*id.*), it would not have fought so hard to avoid enforcement of the disputed settlement agreement.

While Plaintiff's Motion includes verbose and boisterous allegations of fraud, when Plaintiff's conclusory allegations are examined, they fall apart. This is not for want of trying; IOTC USA simply was not created or used to defraud. Plaintiff's failure to prove IOTC USA was used for an improper purpose warrants denial of the Motion. Plaintiff also fails to satisfy the final

12

element of alter ego liability, a nexus between the misuse of the corporate form and Plaintiff's harm. *See BEO Mgmt. Corp.*, 314 So. 3d at 438 (finding no nexus between plaintiff's damages and alleged misuse of corporate form where entity issued bad check to plaintiff). Plaintiff erroneously contends the Court already concluded Plaintiff proved causation; the Court held Plaintiff **alleged** causation sufficient to survive a motion to dismiss. Mot. at 4; ECF No. 30 at 14-15. Plaintiff cannot connect its allegations of fraud to its harm, IOTC USA's nonpayment of the Judgment, particularly where the transfers Plaintiff points to nearly entirely predate the Judgment. *See* HS3 SUF, ¶ 18.

In sum, even considering Plaintiff's inadmissible hearsay evidence, Plaintiff cannot prove **any** of the elements required to pierce IOTC USA's corporate veil. Thus, even if the Court finds a non-owner may be an alter ego of an entity, Plaintiff's Motion still must be denied.

### B. The Motion Fails to Address Any of HS3's Defenses.

Even if Plaintiff had established alter ego liability – it has not – HS3's valid defenses preclude summary judgment for Plaintiff.[12] "The movant for summary judgment must factually refute or disprove the affirmative defenses raised, or establish that the defenses are insufficient as a matter of law." *Hancock Bank v. Hill St., L.L.C.*, No. 3:13-CV-71-J-25MCR, 2014 WL 12576792, at *3 (M.D. Fla. July 8, 2014) (*citing Leal v. Deutsche Bank Nat. Tr. Co.*, 21 So. 3d 907, 909 (Fla. 3d DCA 2009)). The Motion fails to address HS3's defenses, discussed below, which each independently preclude summary judgment for Plaintiff. Further, Plaintiff's damages are barred at least in part because it failed to exhaust its remedies and mitigate its damages by seeking to enforce the Judgment against IOTC USA.

### 1. Plaintiff's Claim is Barred by Res Judicata.

Res judicata precludes a claim where a court of competent jurisdiction renders a final judgment on the merits involving identical parties and the same causes of action. *Jang v. United Techs. Corp.*, 206 F. 3d 1147, 1149 (11th Cir. 2000). Causes of action arising from the same "nucleus of operative fact[s]" are the same; the counts asserted need not be identical. *Id.* "[R]es judicata's* bar also encompasses those claims that **could have been raised** previously" and to "**all legal theories and claims** arising out of the same operative nucleus of fact." *Hilliard v. Gutierrez*, No. 21-CV-20513, 2021 WL 2712122, at *7 (S.D. Fla. July 1, 2021) (italics in original); *Acheron*

---

[12] While the Court declined to grant HS3's Motion to Dismiss based on res judicata, statute of limitations, laches, and election of remedies grounds, those arguments were not dismissed with prejudice and are properly considered here. *See, e.g.*, ECF No. 30, p. 7-8 ("The Court declines Defendant's invitation to rule on its election-of-remedies argument to allow for additional consideration on a more complete record.").

13

*Portfolio Tr. v. Mukamal as Tr. of Mut. Benefits Keep Pol'y Tr.*, No. 18-CV-25099, 2021 WL 7368630, at \*25 (S.D. Fla. Sept. 24, 2021), *R&R adopted*, 2022 WL 354241 (Feb. 7, 2022), *aff'd*, No. 22-10748, 2022 WL 17420869 (11th Cir. Dec. 6, 2022) (finding res judicata, based on agreed motion approving agreement, barred plaintiff from bringing claim eliminated in agreement).

In *Ren-Cris Litho, Inc. v. Vantage Graphics, Inc.*, 107 F.3d 4 (2d Cir. 1997) (table), the Court held res judicata barred an action seeking to hold an alleged alter ego liable for a judgment because the creditor could have asserted its alter ego theory in an earlier fraudulent transfer action. The Court explained that "there is no doubt that [creditor]'s suit is barred by res judicata" because the creditor's "present lawsuit arises from the same facts as its state turn-over proceeding, and merely asserts a new legal theory-veil piercing (now) as opposed to fraudulent conveyance (then)-to obtain the identical monetary relief against the same defendants." 107 F.3d 4 at \*3.

In its Order on HS3's Motion to Dismiss (ECF No. 30, p. 6), the Court noted *Apparel Art Int'l, Inc. v. Amertex Enters. Ltd.*, 48 F.3d 576, 586 (1st Cir. 1995) found res judicata did not bar supplementary proceedings where the creditor previously asserted (1) claims regarding fraud in securing and performing a contract ("First Action"); and (2) that the debtors had fraudulently conveyed assets ("Second Action"). *Apparel Art* is distinguishable. There, the court held the First Action (and the assertion of the same claims in the Second Action) was "clearly distinct" from the fraud allegations in the supplementary proceedings, as the First Action related to fraud in *securing* the contract, whereas the supplementary proceedings alleged fraudulent conveyances *after* the creditor obtained a judgment. *Id.* at 585. As to the Second Action, res judicata did not bar supplementary proceedings because the Second Action was dismissed *without prejudice*, with the Court expressly reserving the creditor's right to bring the dismissed claims in a pending related suit. *Id.* at 586 (holding "[u]nder a generally accepted exception to the res judicata doctrine, a litigant's claims are not precluded if the court in an earlier action expressly reserves the litigant's right to bring those claims in a later action" and "[i]t is clear, therefore, that Judge Fusté intended to preserve [creditor]'s right to raise its fraudulent conveyance claims in the supplementary proceedings before Judge Pérez–Giménez. Accordingly, Judge Fusté's dismissal of [creditor]'s claims in [Second Action] does not preclude litigation of Apparel's supplementary pleadings").

Here, unlike in *Apparel Art*, HS3 does not contend the Complaint in the Original Action, akin to the First Action in *Apparel Art*, is res judicata. Rather, res judicata bars Plaintiff's effort to obtain a judgment against HS3 because Plaintiff could have, and did, seek to enforce the Judgment

14

against HS3 *when moving to enforce the settlement*. Original Action, ECF No. 128; *see Ren-Cris*, 107 F. 3d at *3. As in *Ren-Cris*, Plaintiff could have asserted its alter ego claim when moving to enforce the settlement agreement against HS3; it elected not to do so, and res judicata therefore bars its claim. The instant action also is distinguishable from the Second Action in *Apparel Art* because this Court *already decided* – indeed it "carefully considered" – whether the Plaintiff may obtain a judgment against HS3 and determined it could not. Original Action, ECF No. 167, p.1-2, n.1. In contrast, the trial court in *Apparel Art* dismissed the Second Action without prejudice, advising the creditor to pursue those claims in another action. *Compare id. with Apparel Art*, 48 F. 3d at 586 (quoting trial court's decision, "the fraudulent transfer claim is merely one aspect of plaintiff's attempt at collection of the judgment . . . . Since plaintiff has already begun that process in the case before Judge Pérez–Giménez, we cannot entertain these claims again here . . . The dismissal is without prejudice to any legitimate execution of judgment motions which plaintiff may seek to file before Judge Pérez–Giménez."). Because Plaintiff could have brought its alter ego claim against HS3 when enforcing the settlement, and this Court determined HS3 is not liable for the Judgment, res judicata precludes Plaintiff from relitigating HS3's responsibility for the Judgment. *See Ren-Cris*, 107 F. 3d at *3; Answer, Second Defense.

### 2. Plaintiff's Claim is Barred by the Statute of Limitations and Laches.

Plaintiff's alter ego claim is subject to a five-year limitations period that has long-since passed. Fla. Stat. § 95.11(2)(a) ("An action on a judgment or decree of . . . any court of the United States" must be brought within five years"). Answer, Third Defense. Specifically, the Plaintiff's efforts to sue HS3 did not begin until September 2021, *over a decade* after the Court entered the Judgment, and the Plaintiff did not file its Complaint until April 2023, nearly *twelve years* after entry of the Judgment. *See* Original Action, ECF Nos. 248, 272. Yet, essentially[13] all of the material Plaintiff attaches to its SUF is from 2015 or earlier, with the majority of documents being dated between 2007 and 2011. *See generally* SUF. Thus, while Plaintiff could have immediately pursued its alter ego claim against HS3, there is no question that the claim arose *at least* as of 2015, and therefore expired no later than 2020. Further, even absent the clear limitations period, the

---

[13] The only items that post-date 2015 are Plaintiff's counsel's affidavit regarding the Judgment, IOTC USA's 2023 annual report, and IOTC USA's fact information sheet. Plaintiff's SUF, Exs. B, D, and V, respectively. Plaintiff could have prepared the exact same affidavit, and received the fact information sheet, in 2011, immediately after the Judgment was entered. IOTC USA's annual report simply lists its registered agent and manager, it adds nothing to Plaintiff's alter ego claims, and HS3 has been listed as the manager since IOTC USA's 2009 annual report.

equitable doctrine of laches bars the Plaintiff's efforts to collect a more than decade-old judgment, particularly where the materials Plaintiff relies on to support its claim are themselves a decade old. Answer, Eighth Defense. As such, the Motion should be denied.

In *Bell v. Reine*, 305 Fed. App'x 542, 543 (11th Cir. 2008), the Court affirmed dismissal of action on a judgment against alleged alter ego of a debtor because the limitations period set forth in Fla. Stat. § 95.11(2)(a) had expired. *Accord Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1243 (Fla. 2d DCA 1995) (holding five-year limitations period governs action on judgment against alleged alter ego). In *Bell*, the creditor failed to bring its action on a judgment entered against the debtor's alleged alter egos within five years of the entry of the judgment against the debtor. 305 Fed. App'x at 543. Accordingly, the District Court dismissed the claim and the Eleventh Circuit affirmed, holding that "[a]pplying § 95.11(2)(a), the statute of limitations ran on January 13, 2002, five years after the district court entered judgment against [the debtor]." 305 Fed. App'x. at 544. While *Milliken & Co. v. Haima Grp. Corp.*, 654 F. Supp. 2d 1374 (S.D. Fla. 2009) did not apply *Bell*, that case is distinguishable, as it involved a writ of garnishment – an action to *enforce* a Judgment, not an action *on* a judgment. *See Salinas v. Ramsey*, 234 So. 3d 569, 571-72 (Fla. 2018) (holding post-judgment discovery is not an action "on a judgment" and holding an "action" is "any judicial proceeding, which, if conducted to a determination, will result in a judgment or decree."). Indeed, in *Milliken*, the Court held "there are significant factual differences between *Bell* and the present case. The main difference is that in *Bell*, there was an actual motion for imposition of alter-ego liability, ***clearly making it an 'action on a judgment.'*** However, in the instant case, there was no such motion; there was just a Writ of Garnishment. Thus, it is an action to *enforce* a judgment." 654 F. Supp. 2d at 1381.[14]

This case, like *Bell* and unlike *Milliken*, involves a separate complaint seeking to impose alter ego liability subjecting all of HS3's assets to collection; it is an action on a judgment subject

---

[14] *Burshan v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 805 So. 2d 835, 844 (Fla. 4th DCA 2001) also involved garnishment proceedings and explained such proceedings are not actions on judgments but "a step leading to the execution of a judgment already obtained." (quotation marks omitted). Further, *Young v. McKenzie*, 46 So. 2d 184, 185 (Fla. 1950) and *Rosenberg v. U.S. Bank*, 360 So. 3d 795 (Fla. 3d DCA 2023) involved creditors' efforts to execute on the debtors' fraudulently transferred assets, not blanket imposition of alter ego liability against a non-debtor. Attaching a debtor's specific assets held by a non-debtor is enforcement of a judgment; rendering a new judgment against a different individual, and thereby opening *all* of the non-debtor's assets up to execution is discernably different and is, as the Court held in *Bell*, an action "on a judgment" subject to Section 95.11(2)(a)'s five year limitations period. Indeed, in light of the Court's holding in *Nadd v. Le Credit Lyonnais, S.A.*, 804 So. 2d 1226, 1228 (Fla. 2001) that Section 95.11(2)(a) does not apply to recording foreign judgments, if Section 95.11(2)(a) does not apply here and as set forth in *Bell*, it is unclear when it *ever* would apply, rendering the provision meaningless.

16

to Section 95.11(2)(a). *See* Compl., p. 8, (asking the Court to "enter a judgment in favor of Plaintiff and against [HS3]"). The Motion thus should be denied; Section 95.11 bars Plaintiff's claim.

Even absent the expiration of the limitations period, laches bars this action. "[W]hen undue delays are exercised without sufficient reason, it has been held that equitable defenses may be raised which may cut off the right to satisfy a judgment." *Winter v. Allstate Mortg. Corp. of Fla.*, 303 So. 2d 399, 400 (Fla. 3d DCA 1974) (finding purchaser of judgment lien could not enforce judgment when original creditor took no action to enforce judgment and "it was not until eight years [after judgment] that the [purchaser] brought this action which informed the [debtors] for the first time of the existence of the judgment"); *Orr v. Allen-Hanford, Inc.*, 27 So. 2d 823, 825 (Fla. 1946) (upholding finding that judgment creditors lost rights to enforce judgment because their delay was undue and in the ensuing years of silence "many things could take place that would make it unconscionable to satisfy the judgments in question").

Laches requires a defendant to prove plaintiff's lack of diligence and prejudice to the defendant. *McCray v. State*, 699 So. 2d 1366, 1368 (Fla. 1997). "Legal prejudice results when there is a loss or injury to a person who relies on another person's voluntary failure to exercise a legal right. This is primarily a question of equity." *Gaines v. Gaines*, 870 So. 2d 187, 188-89 (Fla. 4th DCA 2004) (finding laches applied where plaintiff did not seek to enforce order granting child support for nearly eleven years) (citation and quotation marks omitted). Courts have found prejudice exists if the delay resulted in the loss of evidence regarding the claim. *See Garcia v. Guerra*, 738 So. 2d 459, 461 (Fla. 3d DCA 1999) (finding creditor's delay prejudiced debtor because debtor no longer had the relevant bank records); *Austin v. Niblick*, 666 F. App'x 547, 549 (7th Cir. 2016) (affirming a district court's denial of a motion for proceeding supplementary due to the plaintiff's inexcusable delay in asserting his rights to a judgment).

Here, the Judgment was entered on May 5, 2011, but the Plaintiff made ***no effort*** to assert a claim against HS3 until ***2021*** – over a decade after entry of the Judgment. *See* Original Action, ECF Nos. 168, 248. This is despite the Plaintiff's knowledge of, and involvement in, IOTC USA's bankruptcy proceeding. *In re. Int'l Oil Trading Co., LLC*, Case No. 15-21596-EPK (Bankr. S.D. Fla. 2015). Plaintiff's SUF does nothing to explain this extraordinary delay. HS3 has relied, for over a decade, on this Court's Order entering the Judgment against IOTC USA only and holding Plaintiff's arguments against HS3 are "without merit." *See* Original Action, ECF No. 167, n. 1; HS3 SUF, ¶ 48. If the Plaintiff now obtains a judgment against HS3, HS3 will be prejudiced, as

17

he would have taken different actions over the past 13 years if he had faced a $5 million judgment. HS3 SUF, ¶ 49; *see, e.g., Garcia*, 738 So. 2d at 461. HS3 will face further prejudice if a judgment is entered against him given the substantial interest that has accrued on the Judgment in the 13 years since it was entered. It simply would be inequitable to permit Plaintiff to obtain a judgment against HS3 based on threadbare alter ego allegations that could have been asserted many years earlier. Thus, laches bars the Complaint, and Plaintiff is not entitled to summary judgment.

### 3. Plaintiff, Having Elected to Enforce the Settlement, Waived its Claims Against HS3, and is Equitably Estopped from Asserting its Alter Ego Claim.

The election of remedies doctrine precludes a party from pursuing "coexistent and inconsistent" remedies. *Barbe v. Villeneuve*, 505 So. 2d 1331, 1332 (Fla. 1987) (rejecting creditor's contention that damages award "did not bar the later award of title to the [boat] because the damage award is uncollectable" because "[t]he election of remedies doctrine is an application of the doctrine of estoppel and operates on the theory that a party electing one course of action should not later be allowed to avail himself of an incompatible course"). In *Barbe*, the plaintiff paid a broker for, but never received, a yacht. *Id*. The plaintiff "voluntarily and intentionally sought and obtained the default judgment against [the broker]," thus the Court held he could not also receive title to the yacht from the owner. *Id.* at 1334. The Court rejected the plaintiff's arguments that election of remedies should not apply because: (i) there was no prejudice to the broker or owner; and (ii) judgment was against a different party and uncollectable. *Id.* at 1332-34.

Here, Plaintiff "voluntarily and intentionally" elected to enforce the settlement. *See id*. at 1334. Faced with IOTC USA's – and HS3's – rebuke of the settlement, Plaintiff could have pursued its complaint in the Original Action against HS3, IOTC USA, and others. Plaintiff did not have to move to enforce the settlement, but it did, knowing the settlement required payment from IOTC USA only. Original Action, ECF No. 167, p. 1-2, n.1. Plaintiff cannot now avoid this choice by pursuing recovery against HS3. *See Barbe*, 505 So. 2d at 1332.

Relatedly, equitable estoppel prevents a party from asserting a claim when that party previously has made "a representation as to a material fact that is contrary to a later-asserted position" and the party claiming estoppel detrimentally relied on that representation. *State v. Harris*, 881 So. 2d 1079, 1084 (Fla. 2004). "'[O]ne may not accept the fruits of a contract and at the same time renounce, or repudiate, the burdens which that contract places upon him.'" *Gleason v. Leadership Housing, Inc.*, 327 So. 2d 101, 104 (Fla. 4th DCA 1976) (citation omitted); *see also Armour v. Monsanto Co.*, 995 F. Supp. 2d 1273, 1284 (N.D. Ala. 2014), *aff'd sub nom. Tolbert v.*

18

*Monsanto Co.*, 625 F. App'x 982 (11th Cir. 2015) (finding estoppel barred plaintiffs' efforts to void judgment based on settlement where plaintiff accepted benefits under settlement).

Here, Plaintiff represented to the Court that it entered the settlement that provided for payment from IOTC USA, not HS3. Original Action, ECF Nos. 128, 150, 167, 168. This is contrary to Plaintiff's current position, that HS3 is liable for the Judgment, and HS3, in conducting his business affairs for the past **13 years** has detrimentally relied on Plaintiff's election and representation. HS3 SUF, ¶ 48. Indeed, just the existence of the Judgment for the past 13 years is prejudicial, as substantial interest has accrued on the Judgment. Had the Judgment been entered against HS3, he would have taken different actions consistent with his legal rights and obligations. HS3 SUF, ¶ 49. Plaintiff cannot "accept the fruits" of enforcing the settlement – a guaranteed $5 million Judgment without the burdens of trial, or even responding to the pending motion to dismiss – "and at the same time renounce, or repudiate, the burdens" of enforcing the settlement – namely, that only IOTC USA is responsible for that Judgment. *See Gleason*, 327 So. 2d at 104.

Similarly, waiver requires showing a right which may be waived, actual or constructive knowledge of the right, and express or implied intent to relinquish the right. *See, e.g., Bueno v. Workman*, 20 So. 3d 993, 998 (Fla. 4th DCA 2009). These elements are easily satisfied here, where Plaintiff had, and knew it had, the right to pursue its claims against HS3 in the Original Action. *See id.* Yet, Plaintiff relinquished that right by instead moving to enforce the settlement – much to IOTC USA and HS3's objection. Original Action, ECF Nos. 135, 153, 216-220. Plaintiff thus waived its right to seek recovery from HS3. *See Bueno*, 20 So. 3d at 998.

In **choosing** to **enforce the settlement**, Plaintiff elected its remedy, a $5 million Judgment **against IOTC USA**. Answer, Twelfth Defense. This equitably estops Plaintiff from seeking a judgment against HS3, and Plaintiff waived the right to do so. *Id.*, Ninth & Tenth Defenses.

### 4. Plaintiff Failed to Exhaust its Remedies and Mitigate its Damages.

Plaintiff's failure to exhaust its remedies against IOTC USA and mitigate its damages by failing to bring this action for over a decade bars its claim in whole or in part. Answer, Fourth and Fifth Defenses; *James Dar, LLC*, 2023 WL 418666, at *5 (denying summary judgment as to amount of damages because question of fact regarding plaintiff's mitigation of damages remained); *Allied Indus. Int'l, Inc. v. AGFA-Gevaert, Inc.*, 688 F. Supp. 1516, 1517 (S.D. Fla. 1988) ("Resort to equity is permitted when remedies provided for satisfaction of a judgment prove inadequate. The judgment creditor may then utilize supplemental proceedings to reach property

19

not subject to levy.") (*citing Gantz v. First Nat. Bank of Miami*, 138 So. 2d 367, 368 (Fla. 3d DCA 1962) ("The only time that resort to a court of equity to enforce a common law judgment is permitted is when the remedies provided for the satisfaction of such judgment have been exhausted, are inadequate or are of no avail.")). Indeed, had Plaintiff brought this action in 2011, after the Judgment was entered, the Judgment would not have accrued interest for 13 years. This is an additional damage that HS3 will face if the Court finds he is IOTC USA's alter ego. The Court should not enter summary judgment on damages while discovery regarding Plaintiff's efforts to exhaust its remedies and mitigate its damages is outstanding. *See* Section IV.C., *infra.*

### C. The Motion Should be Denied Under Federal Rule of Civil Procedure 56(d).

"Generally summary judgment is inappropriate when the party opposing the motion has been unable to obtain responses to his discovery requests" or discovery remains outstanding. *Snook v. Tr. Co. of Ga. Bank of Savannah*, 859 F.2d 865, 870 (11th Cir. 1988); Fed. R. Civ. P. 56(d) (permitting court to deny summary judgment or defer ruling on such motion if non-movant cannot present facts essential to its opposition for specified reasons); *Singh v. Caribbean Airlines Ltd.*, No. 13-20639-CIV, 2013 WL 12104922, at *1 (S.D. Fla. Dec. 2, 2013) (Altonaga, J.) (denying motion for partial summary judgment without prejudice where discovery remained outstanding). Accordingly, and at the least, if the Motion is not denied with prejudice for the myriad other reasons set forth above, the Court should deny the Motion without prejudice or defer ruling on it until HS3 receives responses to his pending discovery. *See* Fed. R. Civ. P. 56(d).HS3 propounded on Plaintiff interrogatories and requests for production of documents relevant to HS3's defenses, including laches,[15] waiver, equitable estoppel, exhaustion of remedies, and mitigation of damages. HS3 SUF, ¶ 51, Coffey Decl., Ex. A at Interrogatory Nos. 2, 19, 20; Ex. B at Request Nos. 31, 45.[16] Plaintiff's responses are due January 22, 2024. *Id.*, ¶ 51. Accordingly, this Court should deny the Motion or defer ruling on it until discovery is complete. *See* Fed. R. Civ. P. 56(d).

### V.   CONCLUSION

Based on all of the foregoing, HS3 respectfully requests that this Court deny the Motion.

---

[15] HS3's discovery seeks information the Court found relevant to laches, like when Plaintiff knew HS3 allegedly used IOTC USA for "improper purposes." ECF No. 30 at 10 (holding laches is "fact-specific" and that the "Complaint does not even allege when the IOTC entities were used to fund 'improper purpose[s]' or when Plaintiff" learned of same).
[16] Asking Plaintiff to identify when and how it learned HS3 allegedly used IOTC entities for improper purposes, why Plaintiff did not bring its claim against HS3 until a decade after the Judgment, and its efforts "to collect on the Judgment," and produce documents concerning IOTC USA's alleged efforts to avoid collection of, and Plaintiff's efforts to collect, the Judgment.

4888-9609-5384.6

Dated:  January 9, 2024                        Respectfully submitted,

*/s/ Heather A. Lee*
Melissa B. Coffey, Esq. (FBN 84090)
Florida Bar No. 84090
mcoffey@foley.com
bblackburn@foley.com
Heather A. Lee (FBN 1011026)
hlee@foley.com
dmills@foley.com
Foley & Lardner LLP
106 East College Avenue, Suite 900
Tallahassee, FL 32301-7732
Telephone: (850) 222-6100
Facsimile: (850) 561-6475

*Counsel for Defendant, Harry Sargeant III*

21

4888-9609-5384.6