## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

SUPREME FUELS TRADING FZE, a
United Arab Emirates company,

      Plaintiff,

                               Case No.: 9:23-cv-80633-CMA

v.

HARRY SARGEANT III, a Florida citizen,

      Defendant.

_____/

## HARRY SARGEANT III'S OPPOSITION TO PLAINTIFF'S STATEMENT OF UNDISPUTED MATERIAL FACTS

Defendant Harry Sargeant III ("HS3"), by and through undersigned counsel and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1(b), hereby submits the following Opposition, with correspondingly-numbered paragraphs, to Plaintiff Supreme Fuels Trading FZE's ("Plaintiff") Statement of Undisputed Material Facts (ECF No. 34, the "SUF") as follows:

1.      Undisputed.

2.      Undisputed that International Oil Trading Company, LLC ("IOTC USA") was organized on or about January 27, 2005 as a manager-managed Florida Limited Liability Company and that HS3 has been a manager of IOTC USA since on or about January 27, 2005.[1] Undisputed that HS3 is now the sole manager of IOTC USA. Undisputed that on or about January 27, 2005 HS3 and Mustafa Abu-Naba'a each owned 50% of the membership interest in IOTC USA and subsequently transferred their ownership interests to an entity which became International Oil Trading Company, Ltd. ("IOTC Bahamas"). IOTC Bahamas owns 100% of IOTC USA. *See* SUF Ex. V; Decl. of Kevin Kirkeide (attached hereto as Exhibit A), ¶ 5. Disputed that "[HS3] and Abu-Naba'a are equal 50% owners of [International Oil Trading Free Zone Company]," as that company no longer exists. *See* SUF Ex. F (Certificate of Continuation). HS3 objects to the remaining allegations, including that "[o]n September 14, 2006, [HS3] and Abu-Naba'a

---

[1] The numbered paragraphs in Plaintiff's SUF are not "limited as far as practicable to a single material fact" as required by Local Rule 56.1(b)(1)(B).  HS3 objects to Plaintiff's SUF on this basis, and responds to paragraphs containing multiple proposed "facts" sentence-by-sentence, where applicable.

4883-6243-5736.5

incorporated International Oil Trading Company BV in the Netherlands" and that IOTC Bahamas "is the sole shareholder of IOTC Netherlands," as these allegations are not material to Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (ECF No. 35, the "Motion"). *See* Fed. R. Civ. P. 56. Whether HS3 and Abu-Naba'a incorporated International Oil Trading Company BV in the Netherlands, and whether IOTC Bahamas is the sole shareholder of that entity, are not relevant because these facts have no consequence in determining whether HS3 is the alter ego of IOTC USA. Fed. R. Evid. 401. Moreover, HS3 objects to these allegations because the Court may not judicially notice a fact found in another litigation. *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994).

3.    Disputed, as HS3 cannot discern to which entity this paragraph refers; it generically references "IOTC." Moreover, HS3 objects to these allegations because the Court may not judicially notice a fact found in another litigation. *Jones*, 29 F.3d at 1553. Undisputed that the Defense Energy Support Center ("DESC," now known as Defense Logistics Agency Energy ("DLA Energy")) awarded IOTC USA contracts to supply fuel to the U.S. Armed Forces in Iraq (the "DLA Energy Contracts").

4.    Undisputed that the first sentence of this paragraph quotes an allegation from the complaint filed in *Supreme Fuels Trading FZE v. International Oil Trading Company, LLC*, Case No. 9:08-cv-81215 (S.D. Fla.) (the "Original Action"), though the substance of this allegation is disputed, and HS3 objects that it is not supported by any material that would be admissible in evidence. *See* Fed. R. Civ. P. 56(c)(2). Undisputed that HS3 was a defendant in the Original Action. Undisputed that, in the Original Action, the Court entered an amended final judgment against IOTC USA only and in the amount of $5,000,000.00 (ECF No. 168). ECF No. 214 in the Original Action is a sealed filing, but undisputed that other filings in the Original Action that cite to ECF No. 214 contain the quotation included in the fourth sentence of this paragraph (*see, e.g.*, ECF No. 253 at 2). Undisputed that IOTC USA appealed the Court's order enforcing a purported settlement agreement between Plaintiff and IOTC USA, and that IOTC USA has not made any payments to Plaintiff towards satisfaction of the judgment.

5.    Undisputed that Plaintiff moved to reopen the Original Action on or about June 29, 2011. ECF No. 214 in the Original Action is a sealed filing, but undisputed that other filings in the Original Action that cite to ECF No. 214 contain the quotation included in the second sentence of this paragraph (*see, e.g.*, ECF No. 253 at 2). HS3, however, disputes the "fact" that "no releases

were ever granted" and objects that this purported fact is a legal conclusion that cannot be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); *see also Demyan v. Sun Life Assurance Co. of Canada*, 148 F. Supp. 2d 1316, 1320 (S.D. Fla. 2001) ("The evidence presented cannot consist of conclusory allegations, legal conclusions or evidence which would be inadmissible at trial."). Undisputed that, on or about August 7, 2012, the Eleventh Circuit dismissed IOTC USA's appeal.

6.      Disputed, HS3 objects to the allegations in this paragraph because they are not supported by any material that would be admissible in evidence, as the referenced exhibit has not been authenticated and is hearsay that does not fall within any exception. *See* Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901.  Undisputed that International Oil Trade Center Co. Ltd ("IOTC Jordan") entered into a services agreement with International Oil Trading Co. FZCO ("IOTC Dubai") to provide services in connection with the DLA Energy Contracts.

7.      Disputed, the first sentence of this paragraph is a merely conclusory allegation not supported even by a citation, much less admissible evidence. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320. Undisputed that, on or about May 29, 2007, DESC sent IOTC USA a letter, though HS3 disputes Plaintiff's characterization of this letter, and HS3 objects to the second sentence of this paragraph because it is neither material nor is it supported by material that has been authenticated or would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901.

8.      Undisputed that, on or about June 4, 2007, IOTC USA sent DESC a letter. HS3 disputes Plaintiff's characterization of this letter, contained in the second, third, and fourth sentences of this paragraph, and objects to these sentences because they do not contain factual assertions but rather Plaintiff's characterization of a letter. Further, HS3 objects to the second, third, and fourth sentences of this paragraph because their allegations are neither material nor are they supported by material that has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901.

9.      Disputed, the first, second, and fourth sentences of this paragraph contain nothing more than merely conclusory allegations not supported even by a citation, much less admissible evidence. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320. Undisputed that the third sentence of this paragraph contains a quotation from Exhibit J, though HS3 objects to the third sentence of this paragraph because it is neither material nor supported by material that

3

has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901.

10.     Disputed, the first, second, fifth, and sixth sentences of this paragraph are merely conclusory allegations not supported even by a citation, much less admissible evidence. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320. HS3 objects to the third and fourth sentences of this paragraph because they are neither material nor supported by material that has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901.

11.     Disputed, HS3 objects to these allegations because they are not supported by material that has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901.

12.     Disputed, the first and second sentences of this paragraph are merely conclusory allegations not supported even by a citation, much less admissible evidence. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320. It is undisputed that HS3 executed the affidavit attached to the SUF as Exhibit M, though Plaintiff's characterization of this affidavit is disputed; the affidavit speaks for itself and is the best evidence of its contents.

13.     Disputed, the first sentence of this paragraph is merely a conclusory allegation not supported even by a citation, much less admissible evidence. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320. HS3 objects to the second and third sentences of this paragraph because they are conclusory and not supported by material that has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901.

14.     Disputed, HS3 objects to this paragraph because its allegations are conclusory and not supported by material that has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901; *see also Demyan*, 148 F. Supp. 2d at 1320. Further, footnote four is speculation not supported by any citation. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320.

15.     Disputed, as the first sentence of this paragraph is conclusory and not supported by material that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802; *see also Demyan*, 148 F. Supp. 2d at 1320. Further, it is disputed that IOTC Bahamas "paid on a regular basis" HS3's credit card bills, and this allegation is conclusory and not supported by authenticated

4883-6243-5736.5

material that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901; *see also Demyan*, 148 F. Supp. 2d at 1320.

16.     Disputed, as this allegation is conclusory, consisting solely of a chart, and not supported by material that has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901; *see also Demyan*, 148 F. Supp. 2d at 1320.

17.     Disputed, HS3 objects to the first three sentences of this paragraph because their allegations are conclusory and not supported by material that has been authenticated or that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901; *see also Demyan*, 148 F. Supp. 2d at 1320. HS3 objects to the last sentence of this paragraph, including its allegation that any funds received in HS3 and his wife's shared bank account were "funds relating to the profits made by IOTC USA from the DESC contracts," because this conclusory allegation is not supported even by a citation, much less admissible evidence. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320.

18.     Disputed, the "fact" set forth in this paragraph is nothing more than Plaintiff's conclusory conjecture, and the "fact" is not supported with a pinpoint citation, much less any citation to authenticated materials that would be admissible in evidence. *See* Local Rule 56.1(b)(1)(B); Fed. R. Civ. P. 56(c)(2); Fed. R. Evid. 802, 901; *see also Demyan*, 148 F. Supp. 2d at 1320. Exhibit R appears to be a summation of certain transfers from ***IOTC Netherlands***, not IOTC USA or even IOTC Bahamas. Indeed, the funds appear to have been sent ***to*** IOTC Bahamas. Exhibit S not only ***predates*** the Judgment, but appears to reflect transfers from IOTC Netherlands. Exhibit T is another unauthenticated summation document with partially-redacted and incomplete[2] statements attached; these documents lack any authentication and it is unclear what they purport to reflect or how they were prepared. Exhibit U again appears to contain incomplete[3] bank statements purportedly for a joint account for HS3 and his wife; these documents lack any authentication and it is unclear what they purport to reflect.

19.     Disputed that IOTC USA or HS3 were involved in any "complex corporate shell game." This "fact" is nothing more than Plaintiff's characterization and conclusory conjecture and is not supported by any authenticated material that would be admissible in evidence. Fed. R. Civ.

---

[2] For example, and without limitation, page 454 is labeled "Page 2 of 5," and pages 1 and 3-4 are missing.

[3] For example, page 475 is labeled "1" in the upper-right corner, but page 476 is labeled "7." It is not even clear these pages are from the same statement, but if they are there are at least 5 missing pages.

4883-6243-5736.5

P. 56(c)(2); Fed. R. Evid. 802, 901; *see also Demyan*, 148 F. Supp. 2d at 1320. Undisputed that Exhibit V is a copy of IOTC USA's Fact Information Sheet, completed in December 2022, over a decade after the Court entered the Judgment, because Plaintiff never served the Fact Information Sheet on IOTC USA until 2022. *See generally*, Docket in the Original Action. HS3 disputes the characterization of Exhibit V; the document speaks for itself and is the best evidence of its contents.

20.    Disputed, the first sentence of this paragraph is merely a conclusory allegation not supported even by a citation, much less admissible evidence. *See* Local Rule 56.1(b)(1)(B); *see also Demyan*, 148 F. Supp. 2d at 1320. Further, HS3 disputes Plaintiff's statement that the jury in *Al-Saleh v. Abu-Naba'a, et al.*, Case No. 50-2008-CA-010187 (Fla. 15th Jud. Cir.) (the "Al-Saleh Litigation") "found that [HS3] used IOTC USA for a fraudulent purpose by entering a $28,000,000.00 judgment against both IOTC USA and [HS3] for common law fraud." This is nothing more than Plaintiff's misunderstanding or mischaracterization of what it means to be found liable for fraud; that IOTC USA and HS3 both were found liable for fraud does ***not*** mean HS3 ***used*** IOTC USA for a fraudulent purpose or to commit fraud. The question of whether HS3 used IOTC USA for a fraudulent purpose was never presented to the jury. *See* Ex. W at 2, ¶ 2. HS3 does not dispute that Florida's Fourth District Court of Appeals affirmed the jury's verdict but disputes the Plaintiff's characterization of Exhibit W, as the Court expressly held "[w]e need not address the issues on appeal arising out of Defendants' fraud counts. As the parties stipulated to the verdict from and the verdict was for the precise amount sought regardless of count, the $28.8 million would, in any event, be due to Plaintiff under the affirmed Jordanian law claims." Ex. W at 3.  In addition, HS3 objects to these allegations because the Court may not judicially notice a fact found in another litigation. *Jones*, 29 F.3d at 1553.

**Statement of Additional Material Facts**

HS3, by and through undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1, respectfully submits the following Statement of Additional Material Facts ("SAMF") in Opposition to Plaintiff's Motion:

21.    IOTC USA is a Florida manager-managed LLC that was created in or about January 2005. Decl. of Kevin Kirkeide (attached hereto as Exhibit A), ¶ 3.

22.    IOTC USA filed a certificate of fictitious name with the Florida Secretary of State to operate under the name IOTC USA. Kirkeide Decl., ¶ 3.

6

23.     HS3 is not a member of IOTC USA. Kirkeide Decl., ¶ 4; Decl. of Harry Sargeant III (attached hereto as Exhibit B), ¶ 2.

24.     IOTC Bahamas owns 100% of IOTC USA. Kirkeide Decl., ¶ 5.

25.     HS3 is not a shareholder of IOTC Bahamas. HS3 Decl., ¶ 4.

26.     HS3 did not solely control IOTC USA's bank account, and did not comingle his own money with IOTC USA's money. Kirkeide Decl., ¶ 21; HS3 Decl., ¶ 6.

27.     Kevin Kirkeide, IOTC USA's Chief Financial Officer, Vice President, and Treasurer, was responsible for making all transfers from IOTC USA's bank accounts during its operations. Kirkeide Decl., ¶ 22.

28.     HS3 was not solely responsible for hiring or firing IOTC USA's employees or contracting on behalf of IOTC USA; Kevin Kirkeide and Mustafa Abu Naba'a also could hire or fire employees or enter into contracts on IOTC USA's behalf. Kirkeide Decl., ¶ 23.

29.     Although IOTC Bahamas is the parent entity of IOTC USA, it does not dominate IOTC USA's existence; IOTC USA directs and controls its own operations separate and apart from IOTC Bahamas. Kirkeide Decl., ¶ 14.

30.     IOTC USA and IOTC Bahamas have always maintained separate corporate existences. Kirkeide Decl., ¶ 14.

31.     IOTC USA maintains a registered agent and has filed its annual report each year since 2006. Kirkeide Decl., ¶ 15.

32.     While it was operating, IOTC USA maintained other corporate formalities, such as a corporate book, corporate minutes, balance sheets, financial statements, and a bank account. Kirkeide Decl., ¶ 17.

33.     IOTC USA has an employer identification number and an operating agreement. Kirkeide Decl., ¶ 18.

34.     While it was operating, IOTC USA passed various formal resolutions. Kirkeide Decl., ¶ 19.

35.     IOTC USA also owned inventory and maintained insurance, including defense base act insurance, when it was operating. Kirkeide Decl., ¶ 20.

36.     IOTC USA was formed as a special purpose entity to transport fuel throughout the Middle East pursuant to contracts (the "Contracts") with the Defense Energy Support Center (now

7

known as Defense Logistics Agency Energy ("DLA Energy")), an agency of the United States government. Kirkeide Decl., ¶ 6.

37.    When IOTC USA was formed, it was adequately capitalized to fulfill this specific purpose. HS3 Decl., ¶ 5.

38.    IOTC USA elected to obtain a credit facility with ABN Amro Bank N.V. ("ABN Amro") to fund the Contracts. Kirkeide Decl., ¶ 7.

39.    ABN Amro required the credit facility to be entered into by a Dutch entity, so International Oil Trading Company BV ("IOTC Netherlands") was formed as a sister company to IOTC USA, to utilize the credit facility to service the Contracts. Kirkeide Decl., ¶ 8.

40.    IOTC USA provided a $150 million guarantee to ABN Amro as security for the loan, and ABN Amro required IOTC USA to assign its rights to the payment proceeds from DLA Energy to ABN Amro as further security. Kirkeide Decl., ¶¶ 9, 10.

41.    Thus, DLA Energy made payments directly to ABN Amro at ABN Amro's insistence, not at IOTC USA's request. Kirkeide Decl., ¶ 10.

42.    IOTC Netherlands recorded accounts payable on its corporate books to reflect the contract proceeds due to IOTC USA. Kirkeide Decl., ¶ 11.

43.    IOTC USA likewise recorded accounts receivable on its corporate books to reflect the proceeds due to it from IOTC Netherlands. Kirkeide Decl., ¶ 11.

44.    In 2008, a dispute arose between IOTC USA and DLA Energy regarding the contracts referenced above, and the Inspector General of the Department of Defense (the "IG") undertook an inquiry into IOTC USA's operations. Kirkeide Decl., ¶ 12.

45.    In 2016, the IG closed its investigation without identifying any fraud vulnerabilities and declined to take judicial or administrative action against IOTC USA. Kirkeide Decl., ¶ 13, Ex. 2.

46.    Because IOTC USA completed its contracts with DLA Energy, IOTC USA effectively has wound down its operations. Kirkeide Decl., ¶ 6.

47.    IOTC USA and HS3 were not found to be alter egos of one another in the Al-Saleh Litigation; that question was not even presented to the jury. SUF Ex. W at 3.

48.    HS3 relied on the Court's determination in the Original Action that there was no judgment against him in conducting his financial and business affairs for the past 13 years. HS3 Decl. ¶ 8.

49.     Had a judgment been entered against HS3 in the Original Action, he would have taken different actions consistent with his legal rights and obligations. HS3 Decl. ¶ 8.

50.     On December 22, 2023, HS3 served requests for production and interrogatories (together, the "Discovery") on Plaintiff. Decl. of Melissa Coffey (attached hereto as Exhibit C), ¶ 2, Exs. A-C.

51.     Plaintiff's responses to the Discovery are due January 22, 2024, and Plaintiff's responses will aid HS3 in developing his defenses, including his laches, waiver, equitable estoppel, exhaustion of remedies, and mitigation of damages defenses. Coffey Decl., ¶ 4.

Dated:   January 9, 2024.                           Respectfully submitted,

                                                    */s/ Heather A. Lee*
                                                    Melissa B. Coffey, Esq. (FBN 84090)
                                                    Florida Bar No. 84090
                                                    mcoffey@foley.com
                                                    bblackburn@foley.com
                                                    Heather A. Lee (FBN 1011026)
                                                    hlee@foley.com
                                                    dmills@foley.com
                                                    Foley & Lardner LLP
                                                    106 East College Avenue, Suite 900
                                                    Tallahassee, FL 32301-7732
                                                    Telephone: (850) 222-6100
                                                    Facsimile: (850) 561-6475

                                                    *Counsel for Defendant, Harry Sargeant III*

9

4883-6243-5736.5