SUPREME FUELS TRADING FZE, a
United Arab Emirates company,

      Plaintiff,                            CASE NO.: 9:23-cv-80633-CMA

v.

HARRY SARGEANT, III, a Florida citizen

      Defendant.

_____/

## PLAINTIFF'S REPLY STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

Plaintiff Supreme Fuels Trading FZE ("Plaintiff"), by and through undersigned counsel, pursuant to the Federal Rule of Civil Procedure 56 and S.D. Fla. Local Rule 56.1(b), hereby submits this Reply Statement of Undisputed Material Facts in support of Plaintiff's Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion for Summary Judgment") [ECF No. 35]. Plaintiff replies to Defendant's responses set forth in his Counterstatement of Material Facts in Part I and to Defendant's "additional material facts" in Part II.

## PART I: PLAINTIFF'S REPLY IN SUPPORT OF ITS STATEMENT OF UNDISPUTED MATERIAL FACTS

Throughout Defendant Harry Sargeant's ("Defendant" or "HS3") Counterstatement of Material Facts [ECF No. 39] the basis for disputing Plaintiff's undisputed material facts relies on evidentiary objections (instead of putting evidence to contradict or deny said facts) and his reliance in *United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (holding that judicial findings of fact in another litigation are not admissible pursuant to Federal Rule of Evidence 803(8)(C)). However, HS3's stipulated admissions of fact in the pre-trial stipulation in the Al-Saleh litigation as reflected in **Exhibit E** to Plaintiff's Undisputed Statement of Material Facts ("Plaintiff's SUF") [ECF No. 34, pgs. 21-41] are admissible as admissions by a party-opponent pursuant to Federal Rule of Evidence 801(d) because HS3 was a defendant in the Al-Saleh litigation and the stipulations were made and signed by his attorneys, Roger S. Kobert and Marc C. Pugliese, acting as HS3's agents within the scope of attorney-client relationship. *See Agere Sys., Inc. v. Advanced Envtl. Tech. Corp.*, 602 F.3d 204, 232 (3d Cir. 2010) (describing that a stipulation may be an admission by a party opponent). Accordingly, HS3's

arguments against the admissibility of the facts stipulated in the Al-Saleh pre-trial stipulation must be disregarded. This applies to Plaintiff's SUF ¶¶ 2-3.[1]

Also, as this court already held in its order denying HS3'S motion to dismiss, the court can take judicial notice of opinions and findings in the Main Action. *See Santibanez v. Wier McMahon & Co.*, 105 F.3d 234, 240 (5th Cir. 1997). Accordingly, HS3's objection to Plaintiff's SUF ¶ 5 lacks merit.

Furthermore, HS3 objects to **Exhibit G** [ECF No. 34 at pgs. 47-48] to Plaintiff's SUF ¶ 6 based on lack of authentication and hearsay. During the Al-Saleh Litigation's trial, Mr. Kirkeide authenticated **Exhibit G**, which was Plaintiff's Exhibit 688 in that trial. *See* **Exhibit 1**, excerpts from Mr. Kirkeide's July 19, 2011 trial testimony at pg. 1499:9-20. This sworn testimony by Mr. Kirkeide, a witness with knowledge, and the actual author of this document is sufficient to authenticate **Exhibit G** pursuant to Fed. R. Evid. 901(b)(1). In addition, this testimony qualifies this document under the business record exception of Fed. R. Evid. 803(6). *See In re Zodiac Enterprises, Inc.*, 84 B.R. 874, 877 (Bankr. S.D. Fla. 1988) (holding that financial statements are admissible under Fed. R. Evid. 803(6) where was here they were prepared by a certified public accountant, based upon information recorded in the normal course of business); *see also* **Exhibit 2**, excerpts from Mr. Kirkeide's July 18, 2011 trial testimony at pgs. 1229-1235 setting out his experience and academic credentials which include an undergraduate degree in business with a major in accounting, a master's degree in taxation, and a CPA license since 1993. Additionally, **Exhibit G** to Plaintiff's SUF ¶ 6 is also admissible under the residual hearsay exception of Fed. R. Evid. 807 because of the testimony set forth in **Exhibits 1 and 2** as well as the fact that its author, Mr. Kirkeide, is the Chief Financial Officer, Vice President, and Treasurer of IOTC USA, prepared the document within the scope of his duties at IOTC USA [ECF No. 39-1 at ¶ 2]. Fed. R. Evid. 807 permits evidence to be admitted if it has sufficient "circumstantial guarantees of trustworthiness." The Consolidated Income Statements for Years Ended December 31, 2005-2010 included in **Exhibit G** to Plaintiff's SUF ¶ 6 bear several guarantees of trustworthiness because Mr. Kirkeide had no incentive to prepare false information given the scope of defending IOTC USA in the multi-million-dollar Al-Saleh Litigation as well as the fact that he is the person with most knowledge as to IOTC USA's financial affairs, and has decades of experience, and is highly trained, in the fields of accounting and financial reporting. Lastly, an October 16, 2008 letter from former U.S.

---

[1] In Plaintiff's SUF ¶ 3, there was a scrivener's error as it should have read "awarded IOTC [**USA**] a series of contracts . . ." The USA part to identify the proper IOTC entity was missing. In any event, HS3 admitted that that the government contracts in question were in fact awarded to IOTC USA [ECF No. 39 ¶ 3].

Representative, Henry Waxman to former U.S. Secretary of Defense, Robert M. Gates in which it was stated that IOTC USA was paid over **$1.4 billion** and earned profits of over **$210 million** to deliver fuel through Jordan into Iraq. *See* **Exhibit 3**, Waxman's letter dated October 16, 2018. The numbers stated in Waxman's letter came from his congressional investigation in which he had access to IOTC USA's financial records. Public records such as Waxman's letter are commonly judicially noticed by the federal courts under Fed. R. Evid. 201. *See Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) ("A trial court may presume that public records are authentic and trustworthy."); *see also U.S. ex rel. Modglin v. DJO Global Inc.*, 48 F. Supp. 3d 1362, 1381 (C.D. Cal. 2014) (The court held that it could take judicial notice of "[p]ublic records and government documents available from reliable sources on the Internet,' such as websites run by government agencies.").

HS3 also objected to **Exhibit L** [ECF No. 34 at pgs. 117-119] of Plaintiff's SUF ¶ 11 which includes IOTC USA's General Ledger as of August 31, 2015. This General Ledger was attached as an **Exhibit 1** by Nicole Testa Mehdipour, the IOTC USA's Chapter 7 Bankruptcy Trustee in an Adversary Proceeding she filed against International Oil Trading Company, B.V. ("<u>IOTC Netherlands</u>") seeking to recover IOTC USA's receivable from IOTC Netherlands in the amount of **$183,875,399.29**. *See* **Exhibit 4**, Adversary Proceeding Complaint attaching **Exhibit L** as its Exhibit 1. The General Ledger is admissible pursuant to Fed. R. Evid. 803(8) because it is a record from a public office and it sets out his activities (to wit, reviewing the debtor's general ledger), and reports a matter observed while under a legal duty to report (an undisclosed asset of IOTC USA, to wit, the **$183,875,399.29** unpaid receivable from IOTC Netherlands) or it alternatively depicts factual findings from a legally authorized investigation into the financial affairs of IOTC USA. Moreover, the Kirkeide Decl. at ¶ 11 [ECF No. 39-1 ¶ 11] acknowledges that IOTC USA recorded an accounts receivable from IOTC Netherlands whereas IOTC Netherlands recorded an accounts payable to IOTC USA. Additionally, Fed. R. Evid. 807 permits evidence to be admitted if it has sufficient "circumstantial guarantees of trustworthiness" and here the Chapter 7 Trustee, who had a fiduciary duty to investigate the financial records of the debtor, and seek to recover assets for the benefit of the creditors. The trustee has no incentive to provide false information and giving that IOTC USA's General Ledger is already in the public domain is the most reasonable way to obtain this documentation.

As to HS3's objections to the evidence submitted on Plaintiff's SUF ¶¶ 13-18, without conceding the validity of said objections, Plaintiff is serving contemporaneously with this filing requests for admissions on IOTC USA in the Main Case and HS3 in this action to establish the facts set forth in these paragraphs through alternative means.

As to HS3's response to Plaintiff's SUF ¶ 20, attached as **Exhibit 5** is a copy of the Al-Saleh Litigation's operative complaint and verdict form which clearly set forth a cause of action against IOTC USA alleging that HS3 established IOTC USA and other IOTC entities for a fraudulent purpose and the jury found in Mr. Al-Saleh's favor in this regard. Accordingly, the fact that IOTC USA was formed for a fraudulent purpose and used to defraud has already been established in a court of law.

## PART II: PLAINTIFF'S RESPONSES TO DEFENDANT'S ADDITIONAL MATERIAL FACTS

21. Undisputed.

22. Disputed, a search conducted by undersigned counsel at the Florida Secretary of State does not reveal that International Oil Trading Company, LLC registered any fictitious name. *See* **Exhibit 6**, print out of search results for fictitious name registrations by owner name (International Oil Trading Company) revealing that this entity has not registered any fictitious name.

23. Undisputed.

24. Undisputed.

25. Disputed as to relevant time and as to whether HS3 is one or the sole ultimate beneficial owner of International Oil Trading Company, Ltd. ("IOTC Bahamas"), a fact he fails to disclose or negate in his declaration. IOTC USA was formed as a special purpose entity to transport fuel throughout the Middle East pursuant to contracts with the U.S. Department of Defense and because these contracts were completed IOTC USA effectively has wound down its operations. HS3's SOF, **Exhibit A**, Kirkeide Decl. ¶ 6 [ECF No. 39-1 at pg. 3]. At all relevant times of IOTC USA's operating as a going concern, HS3 held directly 50% of the membership interests in IOTC USA, or indirectly, through his 50% equity interest in International Oil Trading Free Zone Company ("IOTC Dubai") which later was continued or redomiciled as IOTC Bahamas, which became the parent company of IOTC USA. Plaintiff's SUF ¶ 2 [ECF No. 34 at pgs. 1-3]; *see also* **Exhibit 1**, excerpts from Mr. Kirkeide's July 19, 2011 trial testimony at pg. 1411:18-24.

26. Disputed, as IOTC USA's sole manager, HS3, effectively controlled IOTC USA's bank account by exercising control over his subordinate, Kevin Kirkeide. HS3's SOF ¶¶ 21, 27 [ECF No. 39 at pgs. 6-7]. Kevin Kirkeide testified that HS3 was the top person in management for IOTC USA. *See* **Exhibit 1**, excerpts from Mr. Kirkeide's July 19, 2011 trial testimony at pg. 1395:6-8 Disputed because HS3 used IOTC USA's contracts' proceeds as his own personal funds to fund his luxurious lifestyle including using those funds to pay for his superyacht, credit cards, personal security

team, personal legal fees, and transferred millions of dollars to his personal bank account held with his wife, Deborah Sargeant. Plaintiff's SUF ¶¶ 12-15, and 17 [ECF No. 34 at pgs. 4-5].

27. Undisputed, except that Kirkeide made all of the transfers under the supervision and effective control of his boss, HS3, the sole manager of IOTC USA. HS3's SOF ¶¶ 21, 27 [ECF No. 39 at pgs. 6-7].

28. Disputed, Mr. Kirkeide testified in the Al-Saleh trial that neither IOTC USA nor IOTC Bahamas had any employees, other than Mr. Kirkeide acting as a Chief Financial Officer. *See* **Exhibit 1**, excerpts from Mr. Kirkeide's July 19, 2011 trial testimony at pgs. 1411:14-1412:21.

29. Undisputed that IOTC Bahamas is the parent entity of IOTC USA. Disputed that IOTC Bahamas does not dominate IOTC USA's existence or that IOTC USA directs and controls its own operations separate and apart from IOTC Bahamas. IOTC Bahamas, the sole member of IOTC USA dominated and controlled IOTC USA when it operated as a going concern. IOTC Bahamas and its predecessor IOTC Dubai, IOTC USA, and IOTC Netherlands are shell companies controlled and dominated by HS3 which were operated in tandem to evade the creditors of IOTC USA. Plaintiff's SUF ¶¶ 2-3, 6-19 [ECF No. 34 at pgs. 1-6]. Moreover, Kirkeide's testified in the Al-Saleh trial that IOTC Bahamas f/k/a IOTC Dubai "had the management oversight responsibility of the operations of the contract itself." *See* **Exhibit 2**, excerpts from Mr. Kirkeide's July 18, 2011 trial testimony at pg. 1277:3-10. Kirkeide also testified that IOTC Bahamas formerly known as IOTC Dubai "manages the entire relationship and operation of the [Department of Defense] contracts." *Id.* at pg. 1278:12-13.

30. Undisputed that IOTC Bahamas and IOTC USA are incorporated as separate legal entities, IOTC Bahamas incorporated in the Bahamas, and IOTC USA incorporated as a Florida limited liability company. Disputed because IOTC USA and IOTC Bahamas, while having a formal separate corporate existence were operated as shell companies controlled and dominated by HS3 which were operated in tandem to evade the creditors of IOTC USA. Plaintiff's SUF ¶¶ 2-3, 6-19 [ECF No. 34 at pgs. 1-6].

31. Undisputed.

32. Undisputed, except for the fact that IOTC USA was looted by the shell companies IOTC Netherlands and IOTC Bahamas which were operated in tandem with IOTC USA at the direction and control of HS3. The expenditure of IOTC USA's contract proceeds to fund the luxurious lifestyle of HS3 were not approved in any corporate minute of IOTC USA and while IOTC USA maintained a bank account, the same had at all relevant times *de minimis* account balances because

of all of its revenues and profits from its contracts were diverted to IOTC Bahamas and HS3, using IOTC Netherlands as cut-out.  Plaintiff's SUF ¶¶ 2-3, 6-19 [ECF No. 34 at pgs. 1-6].

33.     Undisputed.

34.     Undisputed, except that no formal resolutions of IOTC USA were passed to use its profits to fund the luxurious lifestyle of HS3.  Plaintiff's SUF ¶¶ 2-3, 6-19 [ECF No. 34 at pgs. 1-6].

35.     Undisputed.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed.

39.     Undisputed.

40.     Undisputed.

41.     Undisputed.

42.     Undisputed.

43.     Undisputed.

44.     Disputed, HS3 is purposely conflating two (2) separate investigations or administrative proceedings to mislead the Court that was not found guilty of fraud or engaging in bribery.  The heavily redacted letter dated February 19, 2016 from the Inspector General of the Department of Defense [ECF No. 39-1 at pgs. 13-14] relates to the conclusion of Congressional Inquiry No. 2011-107 (the "Congressional Inquiry").  The Congressional Inquiry was opened as a result of an October 16, 2008 letter from former U.S. Representative, Henry Waxman to former U.S. Secretary of Defense, Robert M. Gates in which it was stated that IOTC USA was paid over **$1.4 billion** and earned profits of over **$210 million** to deliver fuel through Jordan into Iraq.  *See* **Exhibit 3**, Waxman's letter dated October 16, 2018.  Congressman Waxman accused IOTC USA and HS3 of engaging in war profiteering and highly overcharging U.S. taxpayers for its services.  *Id.*  On the other hand, and separate and apart from the investigation caused by the Congressional Inquiry, the Defense Logistics Agency Energy ("DLA") formerly known as the Defense Energy Support Center ("DESC") refused to pay IOTC USA the total sum of **$74,733,100.70** in connection with its performance of Contract Nos. SP0600-07-D-0483 and SP0600-09-D-0515 because of disputes regarding amount of fuel delivered by IOTC USA and certain fraud allegations.  *See* **Exhibit 6**, Mutual Release and Settlement Agreement between IOTC USA and DLA dated February 13, 2018.  Through this settlement IOTC

USA received approximately *half* of the amount owed to it by DLA,[2] to wit, **$39,975,000.00**.[3] *Id.* ¶ 1. At the time of the settlement, IOTC USA had **lost** its claims to be paid by the Contracting Officer in a decision rendered on November 17, 2010. *Id.* IOTC USA then appealed the denial of its claims to the Armed Services Board of Contract Appeals ("ASBCA"). Notably, the settlement did not adjudicate the fraudulent allegations against IOTC USA which were the subject of the ASBCA appellate proceeding, rather DLA only agreed to "not consider the fraud allegations raised in these appeals . . . in making future contract award decisions." *Id.* ¶ 9. Moreover, DLA was asserting in the ASBCA proceeding that the IOTC USA contracts were void for **taint of bribery** because there was evidence submitted by the government that a **$9,000,000.00** bribe was paid for persons acting for IOTC USA to a Jordanian official to assure that permits required to transport the fuel across Jordan from Aqaba to the Iraq border would be limited to IOTC USA and two other companies. *See* **Exhibit 7**, Opinion by Administrative Judge Freeman on IOTC USA's Motion for Partial Summary Judgment issued on June 22, 2012, at pg. 9.

45. Undisputed.

46. Undisputed.

47. Undisputed.

48. Undisputed.

49. Undisputed.

50. Undisputed.

51. Undisputed.

Dated: January 16, 2023

Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
777 Arthur Godfrey Road, Suite 402
Miami Beach, Florida 33140
E-mail: rodrigo@rdasilvalaw.com
Telephone: (305) 615-1434
Facsimile: (305) 615-1435

By: */s/ Rodrigo S. Da Silva*
    Rodrigo S. Da Silva, Esq.
    *Counsel for Plaintiff, Supreme Fuels Trading FZE*

---

[2] Because of the accrual of interest, at the time of settlement, IOTC USA's claims for lack of payment exceeded **$80 million**.

[3] IOTC USA did not use these funds to pay the judgment owed to Plaintiff.