**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

SUPREME FUELS TRADING FZE, a
United Arab Emirates company,

       Plaintiff,                            CASE NO.: 9:23-cv-80633-CMA

v.

HARRY SARGEANT, III, a Florida citizen

       Defendant.

_____/

**PLAINTIFF'S REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND
INCORPORATED MEMORANDUM OF LAW**

Plaintiff Supreme Fuels Trading FZE ("Plaintiff"), by and through undersigned counsel, pursuant to the Federal Rule of Civil Procedure 56 and S.D. Fla. Local Rule 56.1, hereby files its Reply in Support of its Motion for Summary Judgment and Incorporated Memorandum of Law (the "Motion for Summary Judgment") [ECF No. 35]. In support thereof, Plaintiff states as follows:

### A. HS3 is IOTC USA's Alter Ego

Plaintiff has met all three (3) elements to hold Defendant Harry Sargeant, III ("Defendant") liable for the judgment entered in the Main Action as an alter ego of the judgment debtor International Oil Trading Company, LLC, a Florida manager-managed limited liability company ("IOTC USA"). *First*, the record is undisputed that Defendant is the sole manager and has always been the manager since its inception of IOTC USA [ECF No. 39 ¶ 2]. In fact, Defendant was one of the two (2) initial members of IOTC USA, owning 50% of its membership interests [ECF No. 39 ¶ 2]. Subsequently, International Oil Trading Free Zone Company ("IOTC Dubai") [ECF No. 34 ¶ 2] became the sole member of IOTC USA, and Defendant owned 50% of IOTC Dubai. *Id.* IOTC Dubai was later redomiciled or converted into International Oil Trading Company Ltd. ("IOTC Bahamas"). IOTC Bahamas, the sole member of IOTC USA, controlled IOTC USA and actually managed all of its operations under the U.S. government contracts [ECF No. 44 ¶ 29]. Other than Kevin Kirkeide, IOTC USA does not have any other employees. [ECF No. 44 ¶ 28]. Similarly, IOTC Bahamas had no employees. *Id.* In fact, Defendant and other IOTC entities such as IOTC Bahamas and International Oil Trading Company, B.V. ("IOTC Netherlands") looted IOTC USA of all of its assets to leave undercapitalized and unable to pay its creditors as depicted in the chart below:



*Second*, IOTC USA (and the other IOTC entities) were used in tandem for an improper purpose. In fact, in the Al-Saleh litigation, a jury found that IOTC USA was created and used for fraudulent purposes [ECF No. 44 at pg. 4 and its Exhibit 5]. Additionally, all of the IOTC entities were used in tandem and as sham in which 100% of the revenues generated by IOTC USA's contracts with the Department of Defense were diverted to other entities to fund Defendant's luxurious lifestyle in clear breach of his fiduciary duties as manager of IOTC USA to keep the company properly capitalized. It is undisputed that IOTC USA's sole business when it was operating as a going concern where the government contracts it had with the Department of Defense to supply oil into Iraq through Jordan [ECF No. 39 ¶ 3]. Diverting all of the revenues and profits away from IOTC USA was an

improper use of the corporate form that left it undercapitalized and unable to pay its creditors, including Plaintiff.

*Third*, Plaintiff has suffered damages by Defendant's misuse of the IOTC entities to divert assets away from IOTC USA by effectively looting IOTC USA and leaving it with no assets to pay its creditors.

**B.     HS3's Affirmative Defenses Fail**

An affirmative defense is "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true." DEFENSE, Black's Law Dictionary (11th ed. 2019).

A summary judgment movant under the federal standard does not "preemptively tackle all of [the nonmovant's] affirmative defenses." *See G&G In-Between Bridge Club Corp., v. Palm Plaza Assoc. Ltd.*, 356 So. 3d 292, 299 (Fla. 2d DCA 2023) (citing *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 886 (N.D. Ill. 2014)). Rather, "on a plaintiff's motion for summary judgment on its claims, the defendant bears the initial burden of showing that [an] affirmative defense is applicable." *G&G In-Between Bridge Club Corp.,* 356 So. 3d at 299 (citing *Off. of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D. Fla. 1997)). Only upon such a showing does the burden shift to the plaintiff regarding that affirmative defense. *See G&G In-Between Bridge Club Corp.,* 356 So. 3d at 299. This is because the defendant bears the burden of proof on his affirmative defenses at trial. *See Thorsteinsson v. M/V Drangur*, 891 F.2d 1547, 1550-51 (11th Cir. 1990).

"Piercing a corporate veil is not itself a cause of action any more than the doctrine of *respondeat superior* is." *Turner Murphy Co. v. Specialty Constructors, Inc.*, 659 So. 2d 1242, 1245 (Fla. 1st DCA 1995). "While Florida courts permit alter ego allegations to be pled as a distinct cause of action, federal courts generally find that alter ego is not a separate cause of action for which relief can be granted; rather, alter ego serves a theory to impose liability on an individual for the acts of a corporate entity." *Management v. Beale Street Blues Co, Inc.*, No. 17-cv-81214, 2018 WL 6448385, at *3 (S.D. Fla. Oct. 3, 2018) (quotation marks and citations omitted); *see also Oginsky v. Paragon Props. of Costa Rica LLC*, 784 F. Supp. 2d 1353, 1373 (S.D. Fla. 2011). Because alter ego is not a cause of action, a plaintiff cannot seek to pierce the corporate veil until the corporation itself is found liable. WILLIAM MEADE FLETCHER, 1 FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 41 (1990).

In the order denying Defendant's Motion to Dismiss [ECF No. 30], this Court in a well-reasoned opinion already ruled that Defendant's affirmative defenses of (i) res judicata; (ii) statute of limitations; and (iii) failure to state a cause of action are devoid of any merit. While the Court expressed

skepticism about the "election of remedies" affirmative defense, the Court deferred ruling on a more complete record.  Additionally, the Court acknowledged that the laches affirmative defense was not proper for adjudication at the motion to dismiss stage.   Since alter ego is not even a cause of action, but rather a theory of liability, Plaintiff respectfully submits that all of Defendant's affirmative defenses must fail.

As to the election of remedies affirmative defense, Defendant failed to meet its burden of proof because as this Court already noted, there is nothing inconsistent with Plaintiff seeking to enforce a settlement agreement against one party, IOTC USA, obtain a judgment against it, and then upon unsuccessful efforts to collect on said judgment, seek to hold a third party liable under the alter ego theory of liability.  In fact, there is no legal authority, that supports the proposition that the election of remedies affirmative defense applies to proceedings supplementary to execution.  A judgment creditor in any civil case **can always seek to hold a third-party liable under the alter ego doctrine in proceedings supplementary to execution**, whether that third party was a defendant in the case or is a newly impleaded third-party.  Moreover, because alter ego is not a cause of action, is only a theory of liability that can be asserted only after the corporation is found itself liable, Plaintiff could not have brought the alter ego theory of liability in the Main Action.

Defendant's assertion of the waiver and equitable estoppel affirmative defenses is also misguided.  The fact that Plaintiff sought to enforce the settlement agreement against IOTC USA did not in any manner waive or estops the Plaintiff from engaging in proceedings supplementary to execution to hold the Defendant here liable for the judgment in the Main Action that resulted from Plaintiff's enforcement of the settlement.

As Defendant acknowledges, the equitable defense of laches requires a defendant to prove a plaintiff's lack of diligence **and** prejudice to the defendant. *McGray v. State*, 699 So. 2d 1366, 1368 (Fla. 1997).  As the Court already noted, Plaintiff had the same (20) year statute of limitations to enforce the judgment in the Main Action to bring this proceeding supplementary to execution.  Here, Plaintiff began to take steps to commence this proceeding supplementary in September 2021, only ten (10) years after the entry of the judgment, with ten (10) more years left to enforce the same.  It defies logic that a Plaintiff brings an action a half-term earlier than the applicable statute of limitations, yet the same could be barred under the doctrine of laches.  Because alter ego is not a cause of action, rather a theory of liability, pinning down a date when the "claim accrued" is a pointless exercise.

Defendant also has a bigger problem with this defense, he was unable to come up with any evidence of what prejudice has he suffered other than the accrual of interest on the judgment.  While

he cited cases about the loss of evidence as one potential cause of prejudice, Defendant did not present any admissible evidence that any pertinent evidence has been lost.   Moreover, the accumulation of post-judgment interest is the natural consequence of any proceeding supplementary to execution seeking to hold a third-party liable on an alter ego theory of liability.  Here, the applicable rate of post-judgment interest rate is only **0.22%** pursuant to 28 U.S.C. § 1961(a)-(b).  Even compounding interest annually, the amount of post-judgment interest accrued as of the date of this filing is **$271,365.80** (an increment of only **5.42%** on the original face value of the judgment).

Defendant's assertion of the defenses of failure to exhaust remedies and mitigate damages is equally ill-founded.  Plaintiff obtained a judgment in 2011 in the Main Action against IOTC USA, and IOTC USA is an empty vessel with no assets because it was looted by HS3 and other IOTC entities operating in tandem as set forth in Plaintiff's Statement of Undisputed Material Facts and its Reply Statement of Undisputed Material Facts.  Plaintiff has attempted to levy on IOTC USA's personal property in the Main Action with the aid of the U.S. Marshalls [Main Action, ECF No. 270 at pgs. 11-12], but not property could be found.  Additionally, IOTC USA does not maintain any assets in any bank or brokerage account and even the testimony of his Chief Financial Officer, Kevin Kirkeide, has indicated that the company was wound up its operations [ECF No. 39-1 ¶ 6].  In fact, IOTC USA has transferred assets post-judgment such as its equity interest in Solvochem Logistics  Limited [Main Action, ECF No. 290].  Moreover, IOTC USA's Fact Information Sheet reveals that it has no assets subject to execution [ECF No. 34 at pgs. 482-487].

C.      **The Motion Should Not Be Denied Under Fed. R. Civ. P. 56(d)**

After the filing of the motion for summary judgment, Defendant served requests for production and interrogatories on Plaintiff that Defendant claims it will help him establish his affirmative defenses.  As set out above, most if not all of the affirmative defenses asserted by Defendant do not even apply since alter ego is not a cause of action, but a theory of liability.  In addition, there is sufficient evidence in the record in this action and in the Main Action for the Court to be able to rule on Defendant's affirmative defenses, many of which, do not even raise issues of fact and consist merely of legal argument.

**CONCLUSION**

**WHEREFORE**, Plaintiff, Supreme Fuels Trading FZE, respectfully requests that the Court enter an Order: (i) granting its Motion for Summary Judgment; (ii) finding that Defendant Harry Sargeant, III is the alter ego of Judgment Debtor International Oil Trading Company, LLC; (iii) entering a Final Judgment against Defendant Harry Sargeant, III for $5,000,000.00 plus pre-judgment

interest from May 5, 2011[1] to present and post-judgment interest; (iv) award Plaintiff its reasonable attorney's fees and costs pursuant to §57.115, Fla. Stat. as applied pursuant to Federal Rule of Civil Procedure 69; and (v) award any other further relief that the Court deems just and proper.

Dated: January 16, 2024 Respectfully submitted,

LAW OFFICES OF RODRIGO S. DA SILVA, P.A.
777 Arthur Godfrey Road, Suite 402
Miami Beach, Florida 33140
E-mail: rodrigo@rdasilvalaw.com
Telephone: (305) 615-1434
Facsimile: (305) 615-1435

By: /s/ Rodrigo S. Da Silva
Rodrigo S. Da Silva, Esq.
*Counsel for Plaintiff, Supreme Fuels Trading FZE*

---

[1] This is the date of entry of the Amended Final Judgment against International Oil Trading Company, LLC, the Judgment Debtor in the Main Action.